IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

CRYSTAL A. EVANS,

                    Plaintiff,

        v.

GLOUCESTER TOWNSHIP, et al.,

                    Defendant.

HONORABLE JEROME B. SIMANDLE

Civil Action
No. 14-7160 (JBS/JS)

**OPINION**

APPEARANCES:

Vera McCoy, Esq.
1134 S. Black Horse Pike, #103
Blackwood, NJ 08012
        Attorney for Plaintiff Crystal A. Evans

Douglas Diaz, Esq.
ARCHER & GREINER, PC
One Centennial Square
Haddonfield, NJ 08033
        Attorney for Defendants Gloucester Township, Gloucester
        Township Police Department, and David R. Mayer

**SIMANDLE, Chief Judge:**

**I.    INTRODUCTION**

        In this action, Plaintiff Crystal A. Evans, a former

Gloucester Township Councilmember, alleges that Gloucester

Township ("the Township"), Gloucester Township Police Department

("the Police Department"), former Mayor David R. Mayer, and

other municipal employees conspired to violate her rights under

the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of

the United States Constitution by fostering a culture of political retribution. Plaintiff also asserts several state law claims arising from the same alleged misconduct. Specifically, Plaintiff contends that Mayer and others in his administration subjected Plaintiff to hostility and harassment during council meetings, implicated Plaintiff in an alleged voting fraud scheme, orchestrated Plaintiff's arrest for stalking without probable cause, and participated in a sexually-explicit internet defamation campaign against Plaintiff. Plaintiff attempts to present this series of incidents as part of an expansive conspiracy directed by Defendant Mayer to squelch political opposition and as the product of a municipal policy or custom of political retaliation.

This matter comes before the Court upon a motion to dismiss by Defendants Gloucester Township, Gloucester Township Police Department, and David R. Mayer. [Docket Item 13.] Defendants argue that Plaintiff's claims under 42 U.S.C. § 1983 and 42 U.S.C. § 1985 should be dismissed as untimely, that Plaintiff's state tort claims should be dismissed for failure to comply with the New Jersey Tort Claims Act ("NJTCA"), and that Plaintiff's claims are otherwise insufficiently pleaded. The Court must therefore determine whether Plaintiff's claims are barred by the statute of limitations or the notice requirements under the

2

NJTCA and whether Plaintiff's allegations are sufficient to support her various claims.

For the reasons discussed below, the Court will grant Defendants' motion to dismiss.

## II.  BACKGROUND

### A.  Facts

The Court accepts as true for purposes of the instant motion the following facts from Plaintiff's Amended Complaint. [Docket Item 11.]

Plaintiff Crystal Evans is a former Gloucester Township Councilmember and member of the Gloucester Township Democratic Party. (Am. Compl. ¶ 26.) Plaintiff served as a constituent caseworker for the New Jersey Fourth Legislative District under former state assemblyman and current Mayor of Gloucester Township, Defendant David R. Mayer from January, 2004 to January, 2008. (Id. ¶ 27.) During this time, Plaintiff developed a close relationship with Mayer and he nominated her as the Democratic candidate for Gloucester Township Council in 2007. (Id. ¶ 28.) Plaintiff was elected and served on Council from January, 2008 to January, 2012. (Id. ¶ 29.)

### 1.  Alleged political retaliation while councilmember

Plaintiff alleges that shortly after entering office she fell out of favor with Democratic council members and party leaders because she refused to participate in unethical behavior

and consistently opposed proposals she believed benefitted a
small group of political insiders. (Id. ¶¶ 30, 40.) Before
Plaintiff's first council meeting she was instructed by Township
Clerk Rosemarie DiJosie[1] to vote in favor of a voluminous budget
which Plaintiff did not have an opportunity to review. (Id. ¶
31.) When Plaintiff objected, DiJosie explained that party
leadership expected her "to do as she was told" and Gloucester
Township Tax Assessor Chuck Palumbo allegedly "brow-beat" her in
a private meeting to ensure a favorable vote on the budget. (Id.
¶¶ 32-35.) During the vote, Plaintiff stated on the record that
she did not have time to review the budget and only voted in
favor of it because she was told that failure to do so would
result in the shutdown of essential city services. (Id. ¶ 36.) A
few days later, Mayer, the acting president of the Gloucester
Township Democratic Party at the time, "chastised" Plaintiff for
"embarrassing the Democratic Party" and "belittled" her by
suggesting that he made a mistake in supporting her run for
council. (Id. ¶ 37.) Thereafter, Mayer and S. Daniel Hutchinson
engaged in a series of character attacks which inhibited
Plaintiff's ability to carry out her official duties and
culminated in her dismissal from the constituent caseworker

---

[1] The Amended Complaint contains multiple spellings of the
Township Municipal Clerk's name, including "Rosemarie DiJosie"
and "Rose Mary DiJosie." (Id. ¶¶ 31, 47.) The Court adopts the
spelling as it first appears in the Amended Complaint.

position in June, 2008. (<u>Id.</u> ¶ 39.) Plaintiff also observed
Mayer "routinely instruct subordinate municipal officials to
quash political opposition to unpopular measures" by subjecting
individuals to fines, audits, and civil and criminal
investigations. (<u>Id.</u> ¶ 41.) As mayor, Mayer encouraged other
council members to "publicly deride Plaintiff in an effort to
psychologically intimidate" and force her from office. (<u>Id.</u> ¶
42.) Plaintiff completed her council term in January, 2012 and
did not seek reelection due to the allegedly ongoing hostility
and harassment. (<u>Id.</u> ¶ 43.)

### 2.   Pay-to-play referendum

Plaintiff alleges that after leaving office she continued
to experience harassment directed by Gloucester Township
officials. (<u>Id.</u> ¶ 44.) As a councilmember, Plaintiff supported
"South Jersey Citizens," a Gloucester Township watchdog group,
in its effort to gather signatures for a referendum petition
which sought to establish an ordinance limiting campaign
contributions from municipal contractors. (<u>Id.</u> ¶ 45.) Plaintiff
alleges that from March, 2012 to July, 2012, Mayer conspired
with Gloucester Township Solicitor Howard C. Long and a legal
assistant to the Gloucester Township Law Manager to fabricate a
voting fraud charge against Plaintiff. (<u>Id.</u> ¶ 46.) South Jersey
Citizens submitted the petition signatures to Rosemarie DiJosie
on February 19, 2012. (<u>Id.</u> ¶ 47.) Plaintiff contends that

Defendant Marianne Coyle, a legal assistant in the Township Law Department, threatened an elderly constituent who had signed the petition, JoAnne Stallworth, with a lawsuit if she did not sign an affidavit stating that Plaintiff tricked her into signing the petition by saying it supported funding for a local recreation center. (Id. ¶ 50.) Ms. Stallworth allegedly signed such an affidavit at the law offices of Wade, Long, Wood & Kennedy, LLC in the spring of 2012. (Id. ¶ 52.) Plaintiff maintains that all three partners of this firm were members of Mayer's administration. (Id. ¶ 53.) The affidavit was leaked to a reporter at the Courier Post who contacted Plaintiff to inquire into voter fraud allegations leveled by the Mayer administration. (Id. ¶ 55.) According to Plaintiff, Defendants also attempted to use Ms. Stallworth's affidavit "to manufacture a voter fraud allegation against Plaintiff in a public lawsuit" brought by South Jersey Citizens against Rosemarie DiJosie. (Id. ¶ 56.)

### 3. Alleged workplace harassment

From July 19, 2010 to November 12, 2012, Plaintiff was employed as the manager of the Turnersville branch of the New Jersey Motor Vehicles Commission ("MVC"). (Id. ¶ 57.) Between September, 2011 and November, 2012, Plaintiff began receiving automated phone calls from the Gloucester Township Police Department and Mayer's office announcing weather alerts and

6

emergency storm procedures. (Id. ¶ 59.) Plaintiff found these phone calls unusual because her MVC branch was outside the normal target area for such notifications, she received them on her private extension which was only known by state employees, and other MVC employees were not receiving the notifications. (Id. ¶¶ 60-61.) During this same period, Plaintiff suspected that the director of the MVC, Robert Grill, was asked to monitor her activities because Grill required Plaintiff to share her computer username and password with a new hire, Kathleen Sharpe. (Id. ¶ 62.) Plaintiff discovered Ms. Sharpe using the computer in Plaintiff's office on several occasions. (Id.) Plaintiff asserts that the harassment became so severe that she wrote a letter to the Department of Justice in September, 2012 alleging that she was being targeted for political retaliation. (Id. ¶ 63.)

### 4. Alleged false arrest and malicious prosecution

Plaintiff further alleges that on the evening of November 7, 2012, Angela DeLucca[2] contacted the Gloucester Township Police Department to report that someone had damaged the downspouts on her home. (Id. ¶ 64.) Ms. DeLucca and Plaintiff's brother-in-law, Daniel Evans, were involved in a domestic dispute and Mr.

---

[2] The Amended Complaint also contains conflicting spellings of Ms. DeLucca's name. The Court adopts the spelling as it first appears.

Evans asked Plaintiff to pick him up from Ms. DeLucca's home. (Id. ¶ 65.) Plaintiff contends that the reporting officers, Defendants Benjamin Lewitt and Gregory A. Jackson, took advantage of Ms. DeLucca's agitated state to elicit "highly emotional responses . . . about her relationship with Plaintiff." (Id. ¶ 68.) These responses included allegations that Plaintiff harassed Ms. DeLucca by calling her approximately 500 times, visiting her home uninvited on at least twelve occasions, damaging her home, and once threatening Ms. DeLucca's life.[3] (Id. ¶ 69.) Plaintiff alleges that Officer Lewitt improperly used these statements to "unilaterally escalate initial allegations of a predicate disorderly person's offense into a Fourth Degree Felony Stalking charge." (Id. ¶ 70.) Plaintiff alleges that Ms. DeLucca never asked the police to pursue charges. (Id. ¶ 72.) Plaintiff also asserts that the Investigative Field Reports prepared by the officers reveal a failure to investigate and collect evidence in good faith before the Criminal Complaint-Summons was issued on November 8, 2012. (Id. ¶ 74.) No attempt was made to contact Plaintiff prior to issuing the summons. (Id. ¶ 77.) According to Plaintiff, on

---

[3] Plaintiffs note that the "alleged recorded statement has never been produced for Plaintiff or her legal representatives." (Id.)

November 8, 2012,[4] both Ms. DeLucca and Mr. Evans attempted to explain that Mr. Evans had called Plaintiff to Ms. DeLucca's residence the prior evening, but the Township Police Department refused to withdraw the stalking complaint. (Id. ¶ 78.) Despite their efforts, the police refused to take a statement from either Ms. DeLucca or Mr. Evans. (Id. ¶ 81.)

On the morning of November 8, 2012, Plaintiff's counsel, Gary Lammono, Esq., contacted the Township Police Department and arranged for Plaintiff to voluntarily appear at the station that afternoon for processing. (Id. ¶ 82.) Nevertheless, arrangements were made with the Camden County Prosecutor's Office for the Gloucester Township police officers to arrest Plaintiff out of district at her place of work, the Turnersville MVC. (Id. ¶ 83.) In the late afternoon of November 8, 2012, a Camden County prosecutor and three Gloucester Township Police Department officers made "a very public display of entering" the Turnersville MVC to arrest Plaintiff. (Id. ¶ 84.) Soon thereafter, on November 14, 2012,[5] Plaintiff was terminated from her position at the MVC. (Id. ¶ 88.) Ultimately, Plaintiff was not indicted by a grand jury and the felony stalking charge was

---

[4] The Amended Complaint provides a date of November 8, 2014, however the context makes clear that Plaintiff in this paragraph refers to November 8, 2012. (Id. ¶ 78.)
[5] Again, the Amended Complaint states this date as November 14, 2014, but it is apparent from the pleadings as a whole that the correct date is November 14, 2012. (Id. ¶ 88.)

downgraded to a disorderly person citation for harassment and
dismissed. (Id. ¶ 89.) Following dismissal of the charge, a
member of the Camden County Prosecutor's office allegedly
admitted to Plaintiff's counsel, William H. Buckman, Esq., that
the charges never should have been forwarded to the Camden
County Prosecutor's Office. (Id. ¶ 90.)

### 5.   Alleged internet defamation

Beginning in March, 2012, Plaintiff alleges that Mayer
and/or the Gloucester Township Police Department directed
Defendants James Dougherty, Frank Mellace, Melissa Mellace, the
Gloucester Township Residence Media Resources (a/k/a gtrmc.com),
and others to publish false, offensive, and sexually explicit
materials about Plaintiff and her family in the comments section
of articles published on gloucestertownship.patch.com and in
blogposts on gtrmc.com. (Id. ¶ 91.) The Amended Complaint
contains numerous examples of such comments. Around November 9,
2012 Defendant David Harkins contacted Sean McCullen,[6] the editor
of a local community blog, gloucestertownship.patch.com, to
publish details of Plaintiff's arrest. (Id. ¶ 92.) On November
9, 2012, someone using the handle "gtisblue" began a blogpost on
gtrmc.com entitled, "Gloucester Township Councilperson
Arrested??" which reported that a councilperson had been

---

[6] "McCullen" is alternately identified as "Sean McMullen." (Id. ¶
97.)

arrested for "erratic and reckless driving as well as a battery of civil charges involving a domestic dispute." (Id. ¶ 94.) On November 10, 2012, someone using the handle "ymbdfa" posted the following: "Well the story I heard was that she was driving in a reckless fashion without headlights and as it turns out it was because she apparently was trying to find her husband." (Id. ¶ 95.) Plaintiff contends that these posts indicate detailed knowledge of allegations which were not revealed until November 13, 2012 in a Supplementary Field Report filed by Gloucester Township Police Officer Christer Lewis Gerace. (Id. ¶ 96.)

On or about November 13, 2012, Sean McCullen published details of Plaintiff's arrest as obtained from Defendant David Harkins in an article entitled "Former Gloucester Township Councilwoman arrested." (Id. ¶ 97.) On November 14, 2012, someone using the handle "Best4GT" whom Plaintiff believes to have been Defendant Mayer, wrote that "Ms. Evans just went off her rocker when she found her husband in this woman's home." (Id. ¶ 98.) On the same day, someone using the handle "YMBDFA" posted that Plaintiff had a previous criminal record for "using a government computer for unofficial business." (Id. ¶ 99.) On November 15, 2012, gtrmc.com was closed for public comment and thereafter only private paid members of gtrmc.com could post to the site. (Id. ¶ 100.) Also on November 15, 2012, "Best4GT" stated that Plaintiff had driven to Ms. DeLucca's residence and

11

caught her spouse "banging the hell" out of one of her friends. (Id. ¶ 101.)

Several months later, on February 21, 2013, a gtrmc.com user with the handle "Sybil Evans" wrote that Plaintiff had a previous history of criminal incidents involving stalking, threats of violence, and vandalism and "insinuated" that Plaintiff was having an affair with her brother-in-law Daniel Evans. (Id. ¶ 102.) On February 22, 2013, "YMBDFA" stated that Plaintiff had a criminal history and implied that Plaintiff was providing names and addresses of minors to a known male sex offender and previously used her teenage modeling business, Role Models, Inc., as a recruitment vehicle for underage female victims. (Id. ¶ 103.) On March 4, 2013, "Best4GT" whom Plaintiff believes to be Defendant Mayer, posted the following: "It is known that Crystal Evans was previously arrested for stalking and made death threats by phone to Mr. Mellace in the past. Police reports were filed on the night of July 19, 2011, and the police have been investigating the incident since." (Id. ¶ 104.) At the time of these posts, gtrmc.com was owned and operated by Defendant Frank Mellace, a Gloucester Township Democratic Committee member who worked in the Gloucester Township Tax Assessor's Office. (Id. ¶ 105.)

Plaintiff further alleges that beginning on November 9, 2012, Mayer and/or the Gloucester Township Police Department

directed Mellace and others to use "Search Engine Optimization techniques to backlink the original Patch media and gtrmc.com articles" to make the allegedly degrading statements appear near the top of the internet search results for Plaintiff's name. (Id. ¶ 106.) Additionally, Plaintiff alleges that since at least June, 2014, Defendant James Dougherty and others published false profiles using Plaintiff's name and likeness on internet pornography sites, including xhorni.com. (Id. ¶ 108.) Beginning in March, 2015, Mayer and/or the Gloucester Township Police Department directed an unknown individual to create pages on Frompo.com which include Plaintiff's name, photograph, and address. (Id. ¶ 109.) Plaintiff asserts that from November, 2012 to present the above conduct by Defendants has significantly diminished her ability to secure employment. (Id. ¶ 110.)

**B.  Procedural History**

Plaintiff filed this action on November 14, 2014. [Docket Item 1.] Defendants Gloucester Township, Gloucester Township Police Department, and Mayor Mayer filed a motion to dismiss which the Court dismissed as moot [Docket Item 12] after Plaintiff filed an Amended Complaint on April 20, 2015. [Docket Item 11.] Plaintiff's 12-count Amended Complaint consists of claims for municipal liability; conspiracy to commit gender discrimination in violation of 42 U.S.C. § 1985; violation of Plaintiff's First Amendment right to engage in protected

13

political speech; malicious prosecution; abuse of process; false arrest; violation of Plaintiff's Fourteenth Amendment liberty interest in reputation; false light; tortious interference with a business relationship; intentional infliction of emotional distress; and violation of Plaintiff's Fourteenth Amendment substantive and procedural due process rights. Plaintiff asserts such claims against 17 named defendants: Gloucester Township; Gloucester Township Police Department; David R. Mayer; David Harkins; David Carlamere; Howard C. Long; Marianne Coyle; Officer James Dougherty; Officer Benjamin Lewitt; Officer Gregory A. Jackson; Robert Grill; Frank Mellace; Melissa Mellace; Gloucester Township Residence Media Resources; gtrmc.com accountholder "Best4GT;" gtrmc.com accountholder "ymbdfa;" and gtrmc.com accountholder "Sybil Evans."[7]

Defendants Gloucester Township, Gloucester Township Police Department, and Mayor Mayer filed the instant motion to dismiss Plaintiff's Amended Complaint. [Docket Item 13.] After the Court granted Defendants' motion to strike Plaintiff's initial opposition brief [Docket Item 19], Plaintiff filed opposition in

---

[7] Plaintiff also asserts these claims against numerous fictitious defendants: Jane Doe Camden County Prosecutor; John Doe Gloucester Township Police Officers (1-3); John Does (1-10); and XYZ Corporations (1-10).

conformity with the Court's Order. [Docket Item 20.] Defendants filed a reply. [Docket Item 21.][8]

## III. STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that the plaintiff failed to set forth fair notice of what the claim is and the grounds upon which it rests. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint will survive a motion to dismiss if it contains sufficient factual matter to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). Although a court must accept as true all factual allegations in a complaint, that tenet is "inapplicable to legal conclusions," and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Id. at 678.

A statute of limitations defense may be raised by motion under Rule 12(b)(6) if the limitations bar is apparent on the face of the complaint. Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014).

---

[8] None of the other Defendants have responded to the Amended Complaint.

15

IV.  **DISCUSSION**

    A.  **Statute of limitations**

       The Court begins by addressing Defendants' argument that Plaintiff's claims are barred by the statute of limitations. Defendants contend that Plaintiff's claims under § 1983 and § 1985 are time-barred because they were filed beyond the two year limitations period applicable to personal injury claims in New Jersey.[9] See Pittman v. Metuchen Police Dep't, 441 F. App'x 826, 828 (3d Cir. 2011). Plaintiff agrees that the two year period applies to her claims, but argues that they are subject to the continuing violation doctrine, the discovery rule, and equitable tolling. The timeliness of Plaintiff's claims depends on the alleged misconduct on which each is based. Because Plaintiff's claims arise from a series of discrete incidents, many of which occurred more than two years prior to the filing of the initial complaint on November 14, 2014, the Court must address each in turn.

       Defendants' statute of limitations argument is an affirmative defense and "the burden of establishing its

---

[9] A claim under § 1985(3) accrues when the plaintiff "knew or should have known of the alleged conspiracy." Bougher v. Univ. of Pittsburgh, 882 F.2d 74, 80 (3d Cir. 1989). "The statute of limitations, accordingly, runs from the date of each overt act causing damage to plaintiff." Id. Therefore, the Court's statute of limitations analysis is the same for Plaintiff's § 1983 and § 1985 claims.

16

applicability to a particular claim rests with the defendant."
Pension Trust Fund for Operating Engineers v. Mortgage Asset
Securitization Transactions, Inc., 730 F.3d 263, 271 (3d Cir.
2013). A statute of limitations defense may be raised by motion
under Rule 12(b)(6) if the limitations bar is apparent on the
face of the complaint. Schmidt v. Skolas, 770 F.3d 241, 249 (3d
Cir. 2014). Moreover, the Third Circuit has stated in the
context of the discovery rule that when "the pleading does not
reveal when the limitations period began to run . . . the
statute of limitations cannot justify Rule 12 dismissal."
Schmidt, 770 F.3d at 251 (collecting cases) (quotation and
citation omitted).

      At the outset, the Court rejects Plaintiff's argument that
the continuing violation doctrine applies to this case. Both the
federal courts and New Jersey courts recognize this equitable
exception to the statute of limitations. As this Court has
noted, "[v]irtually all of the precedent discussing the
continuing violation doctrine involves workplace discrimination
suits." Major Tours, Inc. v. Colorel, 799 F. Supp. 2d 376, 387
(D.N.J. 2011); see also Speth v. Goode, Civ. 95-0264 (JBS), 2011
WL 221664, at *6-7 (D.N.J. Jan. 20, 2011). New Jersey courts
have described the doctrine as "an equitable exception to the
statute of limitations" that applies to "causes of action
arising under anti-discrimination laws" because "[a]n actionable

17

claim under [New Jersey's Law Against Discrimination] based upon a hostile work environment frequently arises out of repeated incidents that take place over time and by their cumulative effect make it unreasonable and unhealthy for the plaintiff to remain in that work environment." Alliance For Disabled In Action, Inc. v. Renaissance Enterprises, Inc., 853 A.2d 334, 340 (N.J. Super. App. Div. 2004).

In National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002), which New Jersey courts have followed, the Supreme Court addressed the doctrine in the context of workplace harassment. Id. at 115-21. See also Alexander v. Seton Hall Univ., 8 A.3d 198, 203 (N.J. 2010); Shepherd v. Hunterdon Developmental Center, 803 A.2d 611, 623 (N.J. 2002); Green v. Jersey City Bd. of Educ., 828 A.2d 883, 891 (N.J. 2003). The Supreme Court in Morgan established that the doctrine applies only to a certain class of claims, holding that "[h]ostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. The 'unlawful employment practice' therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." Morgan, 536 U.S. at 115. The Morgan Court "distinguished between 'discrete' discriminatory acts, such as wrongful terminations, and acts concerning unlawful employment

18

practices, which 'cannot be said to occur on any particular day,'" and applied the continuing violation doctrine to the latter set of claims. <u>Mancini v. Township of Teaneck</u>, 846 A.2d 596, 599–600 (N.J. 2004) (quoting <u>Morgan</u>, 536 U.S. at 115).

Addressing the continuing violation doctrine in the context of a retaliation claim, the New Jersey Supreme Court has explained the doctrine as follows:

> [T]he continuing violation theory cannot be applied to sweep in an otherwise time-barred discrete act . . . . As we have said, the continuing violation theory was developed to allow for the aggregation of acts, each of which, in itself, might not have alerted the employee of the existence of a claim, but which together show a pattern of discrimination. In those circumstances, the last act is said to sweep in otherwise untimely prior non-discrete acts . . . . What the doctrine does not permit is the aggregation of discrete discriminatory acts for the purpose of reviving an untimely act of discrimination that the victim knew or should have known was actionable.

<u>Roa v. LAFE</u>, 985 A.2d 1225, 1233 (N.J. 2010).

The continuing violation doctrine does not apply to Plaintiff's claims because her claims are based on a series of separate acts which she knew or should have known were actionable at the time they occurred, namely, alleged discrimination during her time as a constituent caseworker and councilmember from 2008 to 2012 (including her dismissal from the constituent caseworker position in June, 2008);[10] a

---

[10] Plaintiff does not address this alleged misconduct in her opposition brief, and Plaintiff's position on the timeliness of claims based thereon is thus unclear.

purportedly false voter fraud allegation in the spring of 2012;
alleged harassment at her workplace from July, 2010 to November,
2012; an allegedly false arrest and subsequent prosecution
beginning in November, 2008; and allegedly disparaging and
defamatory statements about Plaintiff published on the internet.
The doctrine does not apply to Plaintiff's claims based on these
alleged acts because it "does not apply when the plaintiff is
aware of the injury at the time it occurred." Montanez v. Sec'y
Pennsylvania Dep't of Corr., 773 F.3d 472, 481 (3d Cir. 2014)
(quotation omitted). Moreover, Plaintiff's allegations regarding
these incidents do not constitute the same type of
discrimination because they involve allegations of political
discrimination or retaliation, false arrest, defamation, as well
as gender discrimination. Plaintiff does not allege a series of
workplace sleights which would not be independently actionable
such as the jokes and racial epithets at issue in Morgan. Nat'l
R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 120 (2002).
Although Plaintiff alleges an overarching conspiracy, at bottom
Plaintiff's claims rely on a series of isolated incidents rather
than a recurring pattern of harassment or discrimination. See
Beckett v. Pennsylvania Dep't of Corr., 597 F. App'x 665, 668
(3d Cir. 2015); Mandel v. M & Q Packaging Corp., 706 F.3d 157,
166 (3d Cir. 2013). See also Kost v. Kozakiewicz, 1 F.3d 176,
191 (3d Cir. 1993) (addressing timeliness of conspiracy claim

20

and stating that "[a]doption of the last overt act rule urged by [the plaintiff] would invite attempts to revive time-barred injuries by piggy-backing them onto actions occurring within the relevant period"). Indeed, as the New Jersey Supreme Court found in Roa, Plaintiff here cannot use allegedly ongoing acts to salvage otherwise untimely acts of discrimination or instances of alleged wrongdoing that Plaintiff knew or should have known were actionable. Roa, 985 A.2d at 1233. Therefore, the Court finds the continuing violation doctrine inapplicable to Plaintiff's claims.

Having rejected Plaintiff's reliance on the continuing violation doctrine, the Court must consider whether the discovery rule or equitable tolling applies to Plaintiff's claims.[11] The Court first considers Plaintiff's § 1983 and § 1985 claims to the extent they are based on Plaintiff's November 8, 2012 arrest and subsequent prosecution. "[A] § 1983 claim for false arrest accrues on the date of the plaintiff's arrest, while a malicious prosecution claim does not accrue until a favorable termination is obtained." Torres v. McLaughlin, 163 F.3d 169, 176 (3d Cir. 1998) (citing Rose v. Bartle, 871 F.2d

---

[11] Plaintiff appears to argue only that the discovery rule applies to her claims based on her November 8, 2012 arrest and the alleged internet defamation campaign. As such, the Court only addresses the discovery rule below in the context of these two underlying circumstances.

331, 348–351 (3d Cir. 1989)).[12] Accordingly, it is apparent on the face of the Amended Complaint that Plaintiff's false arrest claim is time-barred. Plaintiff argues that her false arrest claim based on the November 8, 2012 arrest did not accrue until various subsequent events occurred, including when she learned that the police lacked probable cause to arrest her, when she suffered damages through loss of employment, or when she was formally arraigned. Plaintiff's arguments are inapposite because "the statute of limitations upon a § 1983 claim seeking damages for a false arrest . . . begins to run at the time the claimant becomes detained pursuant to legal process." Wallace v. Kato, 549 U.S. 384, 397 (2007). "The relevant inquiry becomes whether the plaintiff had sufficient information on the night of his/her arrest to state a claim for false arrest." Dique v. Mulvey, Civ. 04-563 (KSH), 2008 WL 1882856, at *5 (D.N.J. Apr. 24, 2008), aff'd sub nom. Dique v. New Jersey State Police, 603 F.3d 181 (3d Cir. 2010). As in Dique, the Court finds that the Amended Complaint makes clear that Plaintiff knew that she was arrested on November 8, 2012 and she knew the circumstances of her

---

[12] "A claim for false imprisonment accrues when an arrestee appears before a magistrate and is bound over for trial, because, after that, he is being held pursuant to legal process." Pittman v. Metuchen Police Dep't, 441 F. App'x 826, 828 (3d Cir. 2011). However, the Amended Complaint purports to state a claim for false arrest, not false imprisonment. Plaintiff's arguments in briefing regarding false imprisonment are therefore misplaced.

22

arrest. Plaintiff may not have known everything that she now alleges, but she knew at the time of her arrest that the police allegedly lacked probable cause. Because Plaintiff filed this action over two years after she was "detained pursuant to legal process," Wallace, 549 U.S. at 397, Plaintiff's false arrest claim is time-barred.[13]

Defendants also argue that Plaintiff's First Amendment retaliation claim and her Fourteenth Amendment due process claim are time-barred to the extent they are based on her allegedly improper arrest on November 8, 2012. Because Plaintiff was arrested on November 8, 2012 more than two years before she filed the original complaint, Plaintiff's due process claim is also time-barred. See Blow v. Paterson Police Dep't, Civ. 11-2128 (SRC), 2012 WL 368206, at *6 (D.N.J. Feb. 3, 2012) (dismissing as time-barred plaintiff's due process and equal protection claims based on allegedly improper arrest and

---

[13] Plaintiff argues that the discovery rule applies to her false arrest claim. Plaintiff contends that she did not have constructive notice of the alleged lack of probable cause until criminal discovery was produced to her attorney on or around February 1, 2013. Plaintiff does not allege this fact in the Amended Complaint and therefore the Court cannot rely upon it. See Frederico v. Home Depot, 507 F.3d 188, 201-02 (3d Cir. 2007). The same is true of Plaintiff's contention in briefing that she was not arraigned until the charges were downgraded and transferred to the Gloucester Township Municipal Court on January 9, 2013. (Pl. Opp. at 16.) Consequently, the Court rejects Plaintiff's attempt to invoke the discovery rule based on facts absent from the Amended Complaint.

23

search). As to the First Amendment claim, such claims "are always individually actionable, even when relatively minor." O'Connor v. City of Newark, 440 F.3d 125, 127-28 (3d Cir. 2006). The Third Circuit has held that principles in Morgan "apply with equal force to § 1983 claims," and to the extent Plaintiff's allegations are "discrete, then each gave rise to a cause of action at the time it occurred." O'Connor, 440 F.3d at 129. Therefore, for the reasons discussed above, the Court finds Plaintiff's First Amendment retaliation claim barred by the statute of limitations to the extent it is based on an arrest which occurred over two years prior to the filing of the complaint.

To the contrary, it is not apparent on the face of the Amended Complaint that Plaintiff's malicious prosecution claim is barred by the statute of limitations. As noted above, malicious prosecution claims do not accrue until charges are dismissed. Ginter v. Skahill, 298 F. App'x 161, 163 (3d Cir. 2008) (citing Smith v. Holtz, 87 F.3d 108, 111 (3d Cir. 1996)). The Amended Complaint does not state when the charges were dismissed and the Court therefore cannot conclude that Plaintiff's malicious prosecution claim is time-barred. For this same reason, the Court finds that Plaintiff's First and Fourteenth Amendment claims, to the extent based on an allegedly improper prosecution, are not clearly time-barred.

The Court now turns to Plaintiff's constitutional claims based on the alleged political retaliation during her time as a constituent caseworker and councilmember, the purportedly false voter fraud allegations against her, the alleged workplace harassment, and the alleged internet defamation. Plaintiff's claims based on these allegations appear barred on the face of the pleadings. The alleged political retaliation or discrimination about which Plaintiff complains during her time on Mayer's staff and as a councilmember concluded when her council term expired in January, 2012 – over two years prior to filing the initial complaint in this action. Similarly, the Amended Complaint describes a conspiracy directed by Mayer to manufacture a voter fraud allegation against Plaintiff from March, 2012 to July, 2012. Plaintiff's allegations regarding alleged harassment at her workplace from July 19, 2010 to November 12, 2012 involve conduct prior to November 14, 2012. As to the allegedly defamatory internet statements that Plaintiff contends began in March, 2012 and continue to present, Plaintiff relies on several statement made prior to November 14, 2012. Any claims based on statements published prior to November 14, 2012 are untimely.

The Court rejects Plaintiff's attempt to invoke the doctrine of equitable tolling under New Jersey and federal law by relying on facts not pleaded in the Amended Complaint. For

example, Plaintiff argues that she is entitled to equitable tolling for her § 1983 and § 1985 claims related to events between April, 2012 and July, 2012 pertaining to the voter fraud allegations because Plaintiff did not learn until July, 2012 that Ms. Stallworth was coerced into signing false affidavits. This fact is absent from the Complaint, and even if accepted as true, fails to render Plaintiff's claim timely. Plaintiff also asserts in briefing regarding the allegedly defamatory internet posts that bloggers attempted to conceal their identities by using pseudonyms and Plaintiff only learned of the connection to Frank Mellace in November, 2014. Because Plaintiff failed to include these allegations in the Amended Complaint, the Court cannot rely on them and they cannot be used to invoke equitable tolling.[14]

In light of the foregoing, the Court finds, based on the allegations in the Amended Complaint, that Plaintiff's § 1983 and § 1985 claims are time-barred with the exception of those based on an allegedly improper prosecution following her November 8, 2012 arrest, as well as Plaintiff's claims based on statements published on the internet after November 14, 2012.

---

[14] The Court also rejects Plaintiff's argument that "two different legal representatives have refused to take steps to preserve Plaintiff's claims, due to fear of retaliation." (Pl. Opp. at 21.) The allegations supporting such an argument appear only in briefing and are wholly absent from the Amended Complaint.

**B.    Notice under the New Jersey Tort Claims Act**

Defendants further argue, as a preliminary matter, that Plaintiff's state tort claims for false light, tortious interference with a business relationship, and intentional infliction of emotional distress must be dismissed because Plaintiff failed to give Defendants proper notice as required by the NJTCA. Plaintiff contends the NJTCA does not apply to her claims against Defendant Mayer because they involve conduct undertaken outside the course of his official duties. Plaintiff also makes clear that she is only asserting state tort claims against the individual defendants, which for purposes of the instant motion means only Mayer.

The NJTCA requires notice of a claim of injury against a public entity to be presented within ninety days of the accrual of the cause of action. A plaintiff is barred from recovering damages from a public entity if "he fail[s] to file his claim with the public entity within ninety (90) days . . . ." N.J.S.A. 59:8-8.[15] Providing such notice within 90 days achieves several goals. It allows the public entity time to review the claim and to promptly investigate the facts and prepare a defense; provides them an opportunity to settle meritorious claims before

---

[15] Failure to comply with the notice requirements under the NJTCA precludes recovery against a public employee, as well as a public entity. N.J.S.A. 59:8-3; Velez v. City of Jersey City, 850 A.2d 1238, 1243 (N.J. 2004).

bringing suit; grants them an opportunity to correct the conditions which gave rise to the claim; and allows them to inform the State in advance as to the expected liability. <u>Velez v. City of Jersey City</u>, 850 A.2d 1238, 1242 (N.J. 2004). The New Jersey Supreme Court in <u>Velez</u> expressly held that the notice provisions of the Act apply to intentional tort claims against public employees such as those at issue here. <u>Id.</u> at 1244-45. <u>See also</u> <u>Lassoff v. New Jersey</u>, 414 F. Supp. 2d 483, 490 (D.N.J. 2006) ("Suits against a public officer in his individual capacity are subject to the notice provisions of the TCA even though the public officer is not entitled to immunity under N.J.S.A. § 59:3-14."); <u>Mawhinney v. Bennett</u>, Civ. 08-3317, 2010 WL 2557713, at *7 (D.N.J. June 22, 2010) (same). Accordingly, Plaintiff's argument that the NJTCA does not apply to her tort claims against Defendant Mayer because he acted outside the scope of his official duties to inflict intentional harm on Plaintiff is meritless and directly contrary to the holding in <u>Velez</u>. Because the Amended Complaint provides no indication that Plaintiff satisfied the notice requirements under the NJTCA and Plaintiff has provided none in briefing, Plaintiff's tort claims against Defendant Mayer are barred by N.J.S.A. 59:8-8 and must be dismissed.

### C.    Section 1985 conspiracy claim

Defendants argue that Plaintiff has failed to state a §
1985 claim against Defendant Mayer based on alleged gender
discrimination. Section 1985(3) creates a cause of action
against any two persons who "conspire . . . for the purpose of
depriving, either directly or indirectly, any person or class of
persons of the equal protection of the laws, or of equal
privileges and immunities under the laws . . . ." 42 U.S.C. §
1985(3). To state a claim under § 1985(3) plaintiff must allege
the following elements: "(1) a conspiracy; (2) for the purpose
of depriving, either directly or indirectly, any person or class
of persons of the equal protection of the laws, or of equal
privileges and immunities under the laws; and (3) an act in
furtherance of the conspiracy; (4) whereby a person is either
injured in his person or property or deprived of any right or
privilege of a citizen of the United States." United Bhd. of
Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott, 463
U.S. 825, 828-29 (1983). The second element requires plaintiff
to allege that the conspiracy was motivated by racial, gender,
or other class-based discriminatory animus. Griffin v.
Breckenridge, 403 U.S. 88, 102 (1971); Slater v. Susquehanna
Cnty., 465 F. App'x 132, 136 (3d Cir. 2012) (quoting Farber v.
City of Paterson, 440 F.3d 131, 135 (3d Cir. 2006)).

In the present action, Plaintiff has failed to allege the deprivation of any federally protected right. Plaintiff's § 1985(3) claim, at least with respect to Defendant Mayer, is premised on allegations that Mayer and others "engaged in an internet defamation campaign using the same pattern of derision and psychological abuse Plaintiff experienced" as a councilmember.[16] (Am. Compl. ¶ 158.) This campaign, according to Plaintiff, consisted of a series of posts in the comments section associated with online articles, the use of a "cyber harassment technique" that manipulated internet search results for Plaintiff's name, and the creation of fake profiles using Plaintiff's name and "likeness" on pornography sites. (Id. ¶¶ 167-68.) Although Plaintiff's allegations may be sufficient to plead a cause of action under state tort law, numerous courts have held that defamation is not actionable under § 1985(3). See White v. United States, 791 F. Supp. 2d 156, 163 (D.D.C. 2011) ("[E]ven if plaintiffs were to allege sufficient facts of conspiracy in this Count, defamation is not actionable under § 1985(3) . . . . Plaintiffs do not maintain, and the Court does not know of, any theory under which an individual is

---

[16] For purposes of this analysis, the Court does not consider Mayer's alleged conduct upon becoming Mayor of Gloucester Township in 2010, including encouraging council members to deride and intimidate Plaintiff, because this conduct is outside the limitations period as explained above.

constitutionally protected against defamation."); <u>Lancaster v. Indep. Sch. Dist. No. 5</u>, 149 F.3d 1228, 1235 (10th Cir. 1998) ("While the injury to reputation asserted by the plaintiff may be actionable under state tort law, it falls far short of a constitutional violation."); <u>Aruai v. Mallozzi</u>, Civ. 14-2320, 2014 WL 3600482, at *6 (E.D. Pa. July 21, 2014)(dismissing § 1985(3) claim based on false light, libel, and defamation because "[s]tate law claims cannot support an action under § 1985(3)"); <u>Banks v. Pittsburgh Tribune Review</u>, Civ. 07-336, 2007 WL 1314617, at *6 (W.D. Pa. May 4, 2007) (finding that § 1985(3) claim based on defamation fails to state a claim "because a conspiracy to defame does not deprive Plaintiff of any federally protected right"). Plaintiff has provided no relevant argument to the contrary.[17] Therefore, the Court will dismiss Plaintiff's § 1985(3) claim against Defendant Mayer for failing to allege the deprivation of a federally protected right.[18]

---

[17] Instead, Plaintiff attempts to bolster her allegations of gender-based discrimination by noting for the first time in her opposition brief that Plaintiff was referred to as "that woman" during Gloucester Township Council meetings.

[18] The Court further finds that Plaintiff's allegations supporting a conspiracy between the defendants are conclusory. Beyond bald assertions that defendants "conspired to . . . harass" Plaintiff and "acted in concert" to "engage[] in an internet defamation campaign," the Amended Complaint contains very little to suggest that the conduct about which Plaintiff complains was anything more than a series of unrelated acts by several individuals. This is insufficient to allege an actual conspiracy.

**D.   Section 1983 claim against Mayer**

Defendants argue that Plaintiff has failed to state a § 1983 claim against Defendant Mayer in counts four through eight. Plaintiff argues in response that Plaintiff has sufficiently pleaded a § 1983 claim against Mayer for political retaliation under the First Amendment, for malicious prosecution under the Fourth Amendment, for abuse of process under the Fourth and Fourteenth Amendments, for deprivation of liberty and property interests under the Fourteenth Amendment, and for deprivation of Plaintiff's rights under 18 U.S.C. § 241.[19]

Section 1983 provides in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To state a claim for relief under section 1983, a plaintiff must allege: 1) the violation of a right secured by the Constitution or laws of the United States and 2) that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255–56 (3d

---

[19] Defendants correctly note that Plaintiff's attempt to add a claim under 18 U.S.C. § 241 via her opposition brief is improper.

Cir. 1994). <u>See also Malleus v. George</u>, 641 F.3d 560, 563 (3d Cir. 2011).

Having conceded that Plaintiff's claims against Mayer in his official capacity should be dismissed, the Court only considers Plaintiff's claims against him in his individual capacity.[20] "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior.*" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 676 (2009). State actors may be liable only for their own unconstitutional conduct. <u>Bistrian v. Levi</u>, 696 F.3d 352, 366 (3d Cir. 2012); <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988). In addition to a claim based on Mayer's own conduct, Plaintiff may state a § 1983 claim against Mayer in his supervisory capacity by alleging that 1) Mayer was a policymaker who "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm;" or 2) he "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had

---

[20] Plaintiff concedes that all claims against Defendant Mayer in his official capacity are duplicative of those against the Township and should be construed as claims against the Township. <u>See</u> <u>Hafer v. Melo</u>, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity . . .  should be treated as suits against the State."). The Court will therefore dismiss all claims against Mayer in his official capacity.

knowledge of and acquiesced in his subordinates' violations."
A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372
F.3d 572, 586 (3d Cir. 2004) (quotations and citations omitted).
See also Barkes v. First Corr. Med., Inc., 766 F.3d 307, 316 (3d
Cir. 2014), rev'd on other grounds sub nom. Taylor v. Barkes,
135 S. Ct. 2042 (2015).

Notwithstanding the Court's conclusion above that many of
Plaintiff's claims against Mayer are time-barred on the face of
the Amended Complaint, Plaintiff has failed to allege sufficient
facts demonstrating Mayer's personal involvement in the alleged
wrongs to establish a § 1983 claim against him in his individual
capacity. Plaintiff's claims for political retaliation, for
malicious prosecution, for abuse of process, for deprivation of
liberty and property interests, and for deprivation of
Plaintiff's rights under 18 U.S.C. § 241 are principally based
on her purportedly false arrest on November 8, 2012.[21] Plaintiff
alleges throughout these counts that Defendants were acting at

---

[21] Even when discussing her claim for political retaliation under
the First Amendment, Plaintiff, in briefing, focuses almost
exclusively on Plaintiff's November 8, 2012 arrest. Like the
pleadings, Plaintiff's arguments in briefing discuss at length
the conduct of Ms. DeLucca, the officers who reported to the
scene of the incident, and to a lesser extent, certain Township
prosecutors. Plaintiff's failure to discuss, even in briefing,
any involvement by Mayer in the November, 2012 arrest belies
Plaintiff's conclusory allegations that he was somehow
personally involved in her purportedly false arrest and
subsequent prosecution.

all relevant times "under the express and/or tacit approval of Defendants, Mayor David R. Mayer and/or Deputy Chief David Harkins." (Am. Compl. ¶¶ 200, 218.) However, this bare allegation is insufficient to state a § 1983 claim for supervisory liability. The Amended Complaint is similarly devoid of allegations supporting an inference that Mayer was personally involved or even aware of Plaintiff's arrest on November 8, 2012. The allegations central to Plaintiff's arrest and subsequent prosecution focus on the Township police officers who arrived on the scene on November 8, 2012 and others in the Police Department who allegedly failed to adequately investigate the underlying incident on which the charges against Plaintiff were based. Plaintiff does not allege that Mayer was involved in the investigation of the underlying incident or the decision to charge Plaintiff in a criminal complaint. In fact, at one point, Plaintiff alleges that Officer Lewitt "unilaterally escalate[d] initial allegations of a predicate disorderly person's offense into a Fourth Degree Felony Stalking charge." (Id. ¶ 70.) Consequently, Plaintiff's allegations, accepted as true, fail to set forth plausible grounds for Defendant Mayer's personal involvement in the November 8, 2012 arrest and subsequent prosecution as required to state a § 1983 claim against him.[22]

---

[22] The Court finds no need to address Plaintiff's allegations regarding conduct outside of the statute of limitations period,

Although Plaintiff alleges that Mayer personally posted
disparaging comments on the internet about her and directed
others to engage in additional forms of cyber harassment, such
allegations are also insufficient to state a claim under § 1983.
As discussed above, allegations of defamation are "actionable
under 42 U.S.C. § 1983 only if it occurs in the course of or is
accompanied by a change or extinguishment of a right or status
guaranteed by state law or the Constitution." Clark v. Twp. of
Falls, 890 F.2d 611, 619 (3d Cir. 1989). Plaintiff alleges that
her ability to secure employment has been significantly
diminished as a result of the alleged internet defamation. (Am.
Compl. ¶ 110.) The Third Circuit in Clark, however, found in the
context of a due process claim that the potential loss of future
employment insufficient to constitute the alteration or
extinguishment of any right or interest. Id. at 620 ("The
possible loss of future employment opportunities is patently
insufficient to satisfy the requirement . . . that a liberty
interest requires more than mere injury to reputation."). As in
Clark, there is no allegation here that Plaintiff applied for

---

including the supposedly trumped-up voter fraud allegation, the
alleged harassment at Plaintiff's workplace, and the alleged
attempt to arrest her at her workplace on November 9, 2012. Even
if these allegations were relevant, they too would be
insufficient to state a § 1983 claim against Mayer because they
do not demonstrate his personal involvement through anything
other than conclusory statements regarding conspiratorial
conduct.

and was rejected from employment.[23] Therefore, the Court also finds Plaintiff's allegations regarding Mayer's role in an internet defamation campaign insufficient to state a § 1983 claim against him.[24]

### E.   Municipal liability

Defendants further argue that Plaintiff has failed to state a claim for municipal liability. Plaintiff maintains in response that all of the alleged misconduct giving rise to Plaintiff's claims resulted from an unconstitutional municipal custom, policy, or practice.

It is well-established that municipal liability under § 1983 "may not be proven under the respondeat superior doctrine, but must be founded upon evidence that the government unit itself supported a violation of constitutional rights." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990) (citing

---

[23] Plaintiff argues in briefing that as a result of the alleged internet defamation she suffered tangible loss of a business relationship when she was discharged from her job at the Turnersville MVC, as well as loss of goodwill in a business venture called Role Models, Inc. (Pl. Opp. at 34.) However, Plaintiff explicitly alleges that she was terminated from the MVC "as a direct and proximate result of the criminal charges and subsequent arrest." (Am. Compl. ¶ 88.) She does not allege that she lost her position at the MVC due to statements on the internet. Moreover, Role Models, Inc. is identified in the Amended Complaint solely as Plaintiff's teenage modeling business. (Id. ¶ 103.) Plaintiff does not allege any loss of goodwill related to this entity as a result of the alleged defamation.
[24] Having so concluded, the Court need not consider Defendants' qualified immunity argument.

<u>Monell v. Dep't of Soc. Servs. of City of New York</u>, 436 U.S. 658 (1978)). As a consequence, a municipality is liable under § 1983 only when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." <u>Monell</u>, 436 U .S. at 694; <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 483 (1986) (plurality opinion) ("[M]unicipal liability under § 1983 attaches where-and only where-a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."). Whether a policy or a custom, "The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." <u>Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown</u>, 520 U.S. 397, 404 (1997). Thus, for a plaintiff to sufficiently demonstrate municipal liability under § 1983, he or she must present facts to support a finding that execution of a specific policy or custom, or the directive of the municipality's final decision maker, caused the alleged harm.

Plaintiff's conclusory allegations in counts one and two as to municipal liability fail to state a claim upon which relief may be granted. Plaintiff alleges that Defendant Mayer and others "fostered a political culture of fear and intimidation .

. . to resolve political grudges" and discourage individuals from exercising their right to political speech. (Am. Compl. ¶ 112.) According to the Amended Complaint, Gloucester Township and the Gloucester Township Police Department "have exhibited an unconstitutional custom, policy, and practice" by which municipal officials harass and intimidate political opponents through "unreasonable fines, audits, civil actions, criminal charges, arrests, prosecutions, cyber harassment and smear campaigns." (Id. ¶ 114.) Plaintiff asserts that she "witnessed firsthand" Defendant Mayer and others in his administration "routinely direct Gloucester Township . . . officials to harass and intimidate political opponents." (Id. ¶ 115.) Plaintiff then casts each instance of alleged misconduct "as a direct and proximate result of Gloucester Township's unconstitutional customs, policies and practices." (Id. ¶¶ 118-24.)[25] Beyond these conclusory allegations, Plaintiff has failed to allege any facts to suggest that the Township or the Police Department was the moving force behind the alleged misconduct. Instead, as discussed above, Plaintiff's allegations indicate that the

---

[25] Plaintiff's allegations in count two are substantially similar to those in count one, except that count two focuses on Defendant Mayer and Defendant David Harkins as the purported final policymakers with respect to the Township and the Police Department. Plaintiff in count two again relies on bare recitals and does not allege additional facts that lend plausibility to Plaintiff's municipal liability claim.

allegedly offending conduct arose from the decisions of the individuals involved.

For example, in regards to Plaintiff's November 8, 2012 arrest, Plaintiff notes the "unilateral" decision by Officer Lewitt to escalate the initial allegations. Plaintiff maintains that Defendants David Carlamere, Marianne Coyle, and Howard C. Long elicited false statements about Plaintiff from an elderly constituent and that various unidentified Camden County prosecutors and Gloucester Township police officers attempted to arrest Plaintiff at her place of work. Likewise, Plaintiff alleges that numerous individuals using different internet pseudonyms posted offensive comments on the internet about Plaintiff.[26] Plaintiff cannot transform such conduct into the basis of a municipal liability claim by merely alleging in conclusory fashion that it stemmed from a municipal policy or custom. Plaintiff's allegations attempt to frame a series of separate incidents as an extensive and prolonged conspiracy to retaliate against her for her political views, but the Amended Complaint contains no facts to support the conclusion that each act was the direct result of a municipal policy or custom or

---

[26] The Court again notes that much of the conduct about which Plaintiff complains occurred outside the statute of limitations period. However, the Court finds that, even if Plaintiff could rely on such conduct, it is insufficient to maintain a municipal liability claim against the Township or the Police Department.

that a final policymaker's conduct caused the alleged
constitutional harm. See Grazier ex rel. White v. City of
Philadelphia, 328 F.3d 120, 125 (3d Cir. 2003). As such, the
Amended Complaint fails to assert a plausible municipal
liability claim, and the Court will grant Defendants' motion to
dismiss as to this claim.

**V.   CONCLUSION**

        In light of the foregoing, the Court will grant Defendants'
motion to dismiss. The Court finds that Plaintiff's § 1983 and §
1985 claims against Defendants Mayer, Gloucester Township, and
the Gloucester Township Police Department are time-barred except
to the extent based on an allegedly improper prosecution
following her November 8, 2012 arrest and allegedly defamatory
internet posts published on or after November 14, 2012.
Plaintiff's state law claims against these Defendants are
precluded by the NJTCA's notice requirements. In addition, the
Court concludes that Plaintiff's § 1985 claim must be dismissed
for failure to allege the deprivation of a federally protected
right and failure to plausibly allege an actual conspiracy.
Plaintiff has likewise failed to allege plausible § 1983 claims
against Defendant Mayer or a plausible municipal liability claim
against the Township and the Police Department.

        Because the Court cannot conclude that amendment would be
futile, dismissal will be without prejudice except for

41

Plaintiff's tort claims which are barred under the NJTCA. Any such amendment within this 21-day period is permitted only for the purpose of curing the deficiencies in the present pleading addressed herein, and not to relitigate matters already decided by repeating the same deficient averments. An accompanying Order will be entered.


**August 20, 2015**                    **s/ Jerome B. Simandle**
Date                                   JEROME B. SIMANDLE
                                       Chief U.S. District Judge

42