IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| CRYSTAL A. EVANS, | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | |
| v. | Civil Action No. 14-7160 (JBS/JS) |
| GLOUCESTER TOWNSHIP, et al., | **OPINION** |
| Defendant. | |

APPEARANCES:

Vera McCoy, Esq.
1134 S. Black Horse Pike, #103
Blackwood, NJ 08012
     Attorney for Plaintiff Crystal A. Evans

Douglas Diaz, Esq.
ARCHER & GREINER, PC
One Centennial Square
Haddonfield, NJ 08033
     Attorney for Defendants Gloucester Township, Gloucester
     Township Police Department, and David R. Mayer

**SIMANDLE, Chief Judge:**

**I.    INTRODUCTION**

In this action, Plaintiff Crystal A. Evans, a former

Gloucester Township Councilmember, alleges that Gloucester

Township ("the Township"), Gloucester Township Police Department

("the Police Department"), former Mayor David R. Mayer, and

other municipal employees conspired to violate her rights under

the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of

the United States Constitution by fostering a culture of political retribution. Plaintiff also asserts several state law claims and violations of 18 U.S.C. §§ 241 and 1961 arising from the same alleged misconduct. Specifically, Plaintiff contends that Mayer and others in his administration subjected Plaintiff to hostility and harassment during council meetings, implicated Plaintiff in an alleged voting fraud scheme, orchestrated Plaintiff's arrest for stalking without probable cause, and participated in a sexually-explicit internet defamation campaign against Plaintiff. Plaintiff attempts to present this series of incidents as part of an expansive conspiracy directed by Defendant Mayer to squelch political opposition and as the product of a municipal policy or custom of political retaliation.

This matter comes before the Court upon a motion to dismiss and a motion for Rule 11 sanctions by Defendants Gloucester Township, Gloucester Township Police Department, and David R. Mayer. [Docket Items 26 & 32.] For the reasons discussed below, the Court will grant both Defendants' motion to dismiss and Defendants' motion for Rule 11 sanctions.

## II.  FACTUAL BACKGROUND AND PROCEUDRAL HISTORY

The Court accepts as true for the purposes of the instant motion the following facts from Plaintiff's Second Amended Complaint. [Docket Item 24.]

2

Plaintiff Crystal Evans is a former Gloucester Township Councilmember and member of the Gloucester Township Democratic Party. (Second Am. Compl. ¶ 38.) Plaintiff served as a constituent caseworker for the New Jersey Fourth Legislative District under former state assemblyman and current Mayor of Gloucester Township, Defendant David R. Mayer from January, 2004 to January, 2008. (Id. ¶ 31.) During this time, Plaintiff developed a close relationship with Mayer and he nominated her as the Democratic candidate for Gloucester Township Council in 2007. (Id. ¶ 32.) Plaintiff was elected and served on the Council from January, 2008 to January, 2012. (Id. ¶ 38.)

**A.    Alleged political retaliation while councilmember**

Plaintiff alleges that shortly after entering office she fell out of favor with Democratic council members and party leaders because she refused to participate in unethical behavior and consistently opposed proposals she believed benefitted a small group of political insiders. (Id. ¶¶ 43, 55.) Before Plaintiff's first council meeting she was instructed by Township Clerk Rosemarie DiJosie to vote in favor of a voluminous budget which Plaintiff did not have an opportunity to review. (Id. ¶ 44.) When Plaintiff objected, DiJosie explained that party leadership expected her "to do as she was told" and Gloucester Township Tax Assessor Chuck Palumbo allegedly "brow-beat" her in a private meeting to ensure a favorable vote on the budget. (Id.

3

¶¶ 45-49.) During the vote, Plaintiff stated on the record that she did not have time to review the budget and only voted in favor of it because she was told that failure to do so would result in the shutdown of essential city services. (Id. ¶ 49.) A few days later, Mayer, the acting president of the Gloucester Township Democratic Party at the time, "chastised" Plaintiff for "embarrassing the Democratic Party" and "belittled" her by suggesting that he made a mistake in supporting her run for council. (Id. ¶ 50.) Thereafter, Mayer and S. Daniel Hutchinson engaged in a series of character attacks which inhibited Plaintiff's ability to carry out her official duties and culminated in her dismissal from the constituent caseworker position in June, 2008. (Id. ¶¶ 52-53.) Plaintiff alleges that Mayer "maintained and enforced a coercive custom of targeting political dissidents with municipal and private harassment" by subjecting individuals to fines, audits, and civil and criminal investigations. (Id. ¶ 30.) Plaintiff routinely witnessed Township officials "stonewall investigations into public expenditures and engage in behaviors to frustrate, harass, and discourage vocal opposition." (Id. ¶ 59.) As mayor, Mayer encouraged other council members to "publicly deride Plaintiff in an effort to psychologically intimidate" and force her from office. (Id. ¶ 65.) Plaintiff alleges that she was removed from investigations and passed over for service on committees. (Id. ¶

4

67.) Plaintiff completed her council term in January, 2012 and did not seek reelection due to the allegedly ongoing hostility and harassment. (Id. ¶ 70.)

**B.  Pay-to-play referendum**

Plaintiff alleges that after leaving office she continued to experience harassment directed by Gloucester Township officials. (Id. ¶ 71.) As a councilmember, Plaintiff supported "South Jersey Citizens," a Gloucester Township watchdog group, in its effort to gather signatures for a referendum petition which sought to establish an ordinance limiting campaign contributions from municipal contractors. (Id. ¶ 72.) Plaintiff alleges that from March, 2012 to July, 2012, Mayer conspired with Gloucester Township Solicitor Howard C. Long and a legal assistant to the Gloucester Township Law Manager to fabricate a voting fraud charge against Plaintiff. (Id. ¶ 73.) South Jersey Citizens submitted the petition signatures to Rosemarie DiJosie on February 19, 2012. (Id. ¶ 74.) Plaintiff contends that Defendant Marianne Coyle, a legal assistant in the Township Law Department, threatened an elderly constituent who had signed the petition, JoAnne Stallworth, with a lawsuit if she did not sign an affidavit stating that Plaintiff tricked her into signing the petition by saying it supported funding for a local recreation center. (Id. ¶ 78.) Ms. Stallworth allegedly signed such an affidavit at the law offices of Wade, Long, Wood & Kennedy, LLC

in the spring of 2012. (<u>Id.</u> ¶ 52.) Plaintiff maintains that all three partners of this firm were members of Mayer's administration. (<u>Id.</u> ¶ 53.) The affidavit was leaked to a reporter at the Courier Post who contacted Plaintiff to inquire into voter fraud allegations leveled by the Mayer administration. (<u>Id.</u> ¶ 80.) According to Plaintiff, Defendants also attempted to use Ms. Stallworth's affidavit as evidence of voter fraud in a lawsuit brought by South Jersey Citizens against Rosemarie DiJosie. (<u>Id.</u> ¶¶ 84-85.) In July 2012, Plaintiff testified on behalf of South Jersey Citizens in the lawsuit "and was cleared of any wrongdoing." (<u>Id.</u> ¶ 87.) Plaintiff alleges that she did not learn of Mrs. Stallworth's affidavit until she and Mrs. Stallworth spoke on the telephone between December 2012 and March 2013. (<u>Id.</u> ¶ 90.)

### C.   Alleged workplace harassment

From July 19, 2010 to November 12, 2012, Plaintiff was employed as the manager of the Turnersville branch of the New Jersey Motor Vehicles Commission. (<u>Id.</u> ¶ 91.) Between September, 2011 and November, 2012, Plaintiff began receiving automated phone calls from the Gloucester Township Police Department and Mayer's office announcing weather alerts and emergency storm procedures. (<u>Id.</u> ¶ 93.) Plaintiff found these phone calls unusual because her Motor Vehicles Commission branch was outside the normal target area for such notifications, she received them

6

on her private extension which was only known by state
employees, and other Commission employees were not receiving the
notifications. (Id. ¶¶ 94-96.) During this same period,
Plaintiff suspected that the director of the Motor Vehicles
Commission, Robert Grill, was asked to monitor her activities
because Grill required Plaintiff to share her computer username
and password with a new hire, Kathleen Sharpe. (Id. ¶ 97.)
Plaintiff discovered Ms. Sharpe using the computer in
Plaintiff's office on several occasions. (Id. ¶ 98.) Plaintiff
asserts that the harassment became so severe that she wrote a
letter to the Department of Justice in September, 2012 alleging
that she was being targeted for political retaliation. (Id. ¶
99.)

### D.    Alleged false arrest and malicious prosecution

Plaintiff further alleges that on the evening of November
7, 2012, Angela DeLucca contacted the Gloucester Township Police
Department to report that someone had damaged the downspouts on
her home. (Id. ¶ 100.) Ms. DeLucca and Plaintiff's brother-in-
law, Daniel Evans, were involved in a domestic dispute and Mr.
Evans asked Plaintiff to pick him up from Ms. DeLucca's home.
(Id. ¶ 101.) Plaintiff contends that the reporting officers,
Defendants Benjamin Lewitt and Gregory A. Jackson, took
advantage of Ms. DeLucca's agitated state to elicit "inflamatory
[sic] responses . . . about her relationship with Plaintiff."

7

(Id. ¶ 102.) These responses included allegations that Plaintiff harassed Ms. DeLucca by calling her approximately 500 times, visiting her home uninvited on at least twelve occasions, damaging her home, and once threatening Ms. DeLucca's life. (Id. ¶ 105.) Plaintiff alleges that "Defendant P/O Benjamin, knowingly and intentionally listed the alleged victim's 'taped statement' and the 'availability of phone records' as grounds for establishing probable cause in the issuance of a felony stalking complaint/summons against Plaintiff" but that neither had been obtained by Officer Benjamin. (Id. ¶¶ 109–10.) Plaintiff alleges that Ms. DeLucca never asked the police to pursue charges and never gave a written statement. (Id. ¶ 112.) No attempt was made to contact Plaintiff prior to issuing the summons. (Id. ¶ 111.)

On the morning of November 8, 2012, Plaintiff's counsel, Gary Lammono, Esq., contacted the Township Police Department and arranged for Plaintiff to voluntarily appear at the station that afternoon for processing. (Id. ¶ 114.) Nevertheless, arrangements were made with the Camden County Prosecutor's Office for the Gloucester Township police officers to arrest Plaintiff out of district at her place of work, the Turnersville Motor Vehicles Commission. (Id. ¶ 115.) In the late afternoon of November 8, 2012, a Camden County prosecutor and three Gloucester Township Police Department officers came to

8

Plaintiff's office and began speaking with several of her co-workers about the criminal complaint that had been issued against her, although Plaintiff was absent at the time. (Id. ¶ 116.) Plaintiff voluntarily appeared at the Gloucester Township Police Department in accordance with her prior agreement. (Id. ¶ 119.)

Plaintiff alleges that, as of the evening of her arrest, she had no knowledge that Officer Benjamin had "misrepresented the existence of probable cause for her arrest." (Id. ¶ 120.) It was not until criminal discovery was exchanged in February 2013 that Plaintiff learned there was no probable cause for her arrest, when she alleges that "no recorded statement [from Ms. DeLucca] had been offered into evidence and that neither the Gloucester Township Police Department, nor the Municipal prosecutor could produce the alleged recorded statement." (Id. ¶ 123.) Ultimately, Plaintiff was not indicted by a grand jury and the felony stalking charge was downgraded to a disorderly person citation for harassment and dismissed. (Id. ¶¶ 143-45.) Following dismissal of the charge, a member of the Camden County Prosecutor's office allegedly admitted that Plaintiff should never have been subjected to criminal arrest and felony charges. (Id. ¶ 146.)

### E.   Alleged internet defamation

Beginning in March, 2012, Plaintiff alleges that Mayer and/or the Gloucester Township Police Department directed Defendants James Dougherty, Frank Mellace, Melissa Mellace, the Gloucester Township Residence Media Resources (a/k/a gtrmc.com), and others to publish false, offensive, and sexually explicit materials about Plaintiff and her family in the comments section of articles published on gloucestertownship.patch.com and in blogposts on gtrmc.com. (Id. ¶ 147.) The Second Amended Complaint contains numerous examples of such comments. In July 2012, someone leaked Mrs. Stallworth's allegedly false affidavit and the voter fraud allegations against Plaintiff to Sean McCullen, the editor of a local community blog, gloucestertownship.patch.com, to publish details of Plaintiff's allegations. (Id. ¶ 150.) Around November 13, 2012, Plaintiff alleges that Defendant David Harkins contacted McCullen again to publish details of Plaintiff's arrest. (Id. ¶ 138.) On November 9, 2012, someone using the handle "gtisblue" began a blogpost on gtrmc.com entitled, "Gloucester Township Councilperson Arrested??" which reported that a councilperson had been arrested for "erratic and reckless driving as well as a battery of civil charges involving a domestic dispute." (Id. ¶ 157.) On November 10, 2012, someone using the handle "ymbdfa" posted the following: "Well the story I heard was that she was driving in a reckless fashion without headlights and as it turns out it was

10

because she apparently was trying to find her husband." (Id. ¶ 158.) Plaintiff contends that these posts indicate detailed knowledge of allegations which were not revealed until November 13, 2012 in a Supplementary Field Report filed by Gloucester Township Police Officer Christer Lewis Gerace. (Id. ¶ 159.)

On or about November 13, 2012, Sean McCullen published details of Plaintiff's arrest as obtained from Defendant David Harkins in an article entitled "Former Gloucester Township Councilwoman arrested." (Id. ¶ 160.) On November 14, 2012, someone using the handle "Best4GT" whom Plaintiff believes to have been Defendant Mayer, wrote that "Ms. Evans just went off her rocker when she found her husband in this woman's home." (Id. ¶ 161.) On the same day, someone using the handle "YMBDFA" posted that Plaintiff had a previous criminal record for "using a government computer for unofficial business." (Id. ¶ 162.) On November 15, 2012, gtrmc.com was closed for public comment and thereafter only private paid members of gtrmc.com could post to the site. (Id. ¶ 164.) Also on November 15, 2012, "Best4GT" stated that Plaintiff had driven to Ms. DeLucca's residence and caught her spouse "banging the hell" out of one of her friends. (Id. ¶ 165.)

Several months later, on February 21, 2013, a gtrmc.com user with the handle "Sybil Evans" wrote that Plaintiff had a previous history of criminal incidents involving stalking,

threats of violence, and vandalism and "insinuated" that
Plaintiff was having an affair with her brother-in-law Daniel
Evans. (Id. ¶ 166.) On February 22, 2013, "YMBDFA" stated that
Plaintiff had a criminal history and implied that Plaintiff was
providing names and addresses of minors to a known male sex
offender and previously used her teenage modeling business, Role
Models, Inc., as a recruitment vehicle for underage female
victims. (Id. ¶ 167.) On March 4, 2013, "Best4GT" whom Plaintiff
believes to be Defendant Mayer, posted the following: "It is
known that Crystal Evans was previously arrested for stalking
and made death threats by phone to Mr. Mellace in the past.
Police reports were filed on the night of July 19, 2011, and the
police have been investigating the incident since." (Id. ¶ 168.)
At the time of these posts, gtrmc.com was owned and operated by
Defendant Frank Mellace, a Gloucester Township Democratic
Committee member who worked in the Gloucester Township Tax
Assessor's Office who was "a close political ally" of Defendant
Mayer. (Id. ¶¶ 171-72.)

Plaintiff further alleges that beginning on November 9,
2012, Mayer and/or the Gloucester Township Police Department
directed Mellace and others to use "Search Engine Optimization
techniques to backlink the original Patch media and gtrmc.com
articles" to make the allegedly degrading statements appear near
the top of the internet search results for Plaintiff's name.

12

(Id. ¶ 174.) Additionally, Plaintiff alleges that since at least June, 2014, Defendant James Dougherty and others published false profiles using Plaintiff's name and likeness on internet pornography sites, including xhorni.com. (Id. ¶ 178.) Beginning in March, 2015, Mayer and/or the Gloucester Township Police Department directed an unknown individual to create pages on Frompo.com which include Plaintiff's name, photograph, and address. (Id. ¶ 179.) Plaintiff asserts that from November, 2012 to present the above conduct by Defendants has "placed a significant financial burden upon Plaintiff by forcing her to spend" money on reputation management fees and legal fees "in an effort to rehabilitate her character." (Id. ¶ 180.)

## F. Ineffective assistance of counsel

Plaintiff alleges that her first legal representative, William H. Buckman, Esq. "first discovered plaintiff's false arrest, abuse of process and malicious prosecution claims while competently representing her in the criminal proceedings arising from her November 8, 2012 arrest" but that subsequent to receiving his retainer, he "inexplicably began to discourage plaintiff from pursuing her § 1983 claims against Gloucester Township municipal officials." (Id. ¶¶ 181-84.) Plaintiff ultimately filed a fee dispute against Mr. Buckman because he refused to either pursue her civil rights claims or return the retainer so that she could seek alternative representation. (Id.

¶ 186.) Mr. Buckman passed away before Plaintiff's fee dispute was finally adjudicated. (Id. ¶¶ 189-90.) Mr. Buckman "failed to protect Plaintiff's claim, allowing at least two statutory deadlines to lapse" and failed to provide Gloucester Township with notice of any potential tort claims. (Id. ¶¶ 191-93.)

Plaintiff then sought alternative legal representation with F. Michael Daily, Esq., who filed a complaint on Plaintiff's behalf in Camden County Superior Court seeking to identify the owner of gtrmc.com. (Id. ¶ 195.) Mr. Daily was then "allegedly subjected to an audit by the Camden County Prosecutor's Office," which made him hesitant to pursue Plaintiff's claims. (Id. ¶¶ 19-97.) What is meant by an "audit" is unknown. Mr. Daily "sent Plaintiff an alarming text message in an effort to discourage her from filing" her Complaint against the Township as a pro se litigant. (Id. ¶ 198.)

**G. Procedural History**

Plaintiff filed this action on November 14, 2014. [Docket Item 1.] Defendants Gloucester Township, Gloucester Township Police Department, and Mayor Mayer filed a motion to dismiss, which the Court dismissed as moot [Docket Item 12] after Plaintiff filed an Amended Complaint on April 20, 2015. [Docket Item 11.] Plaintiff's 12-count Amended Complaint consisted of claims for municipal liability; conspiracy to commit gender discrimination in violation of 42 U.S.C. § 1985; violation of

14

Plaintiff's First Amendment right to engage in protected political speech; malicious prosecution; abuse of process; false arrest; violation of Plaintiff's Fourteenth Amendment liberty interest in reputation; false light; tortious interference with a business relationship; intentional infliction of emotional distress; and violation of Plaintiff's Fourteenth Amendment substantive and procedural due process rights. Plaintiff asserted such claims against 17 named defendants: Gloucester Township; Gloucester Township Police Department; David R. Mayer; David Harkins; David Carlamere; Howard C. Long; Marianne Coyle; Officer James Dougherty; Officer Benjamin Lewitt; Officer Gregory A. Jackson; Robert Grill; Frank Mellace; Melissa Mellace; Gloucester Township Residence Media Resources; gtrmc.com accountholder "Best4GT;" gtrmc.com accountholder "ymbdfa;" and gtrmc.com accountholder "Sybil Evans."[1]

Defendants Gloucester Township, Gloucester Township Police Department, and Mayor Mayer filed a motion to dismiss Plaintiff's Amended Complaint. [Docket Item 13.] The Court granted Defendants' motion, dismissing all claims ("the August 21 Opinion," Evans v. Gloucester Twp., 124 F. Supp. 3d 340 (D.N.J. 2015)). [Docket Items 22 & 23.] In particular, the Court

---

[1] Plaintiff also asserts these claims against numerous fictitious defendants: Jane Doe Camden County Prosecutor; John Doe Gloucester Township Police Officers (1-3); John Does (1-10); and XYZ Corporations (1-10).

dismissed Plaintiff's state tort claims with prejudice for failure to comply with the notice requirement under the New Jersey Tort Claims Act. Plaintiff's other claims were dismissed without prejudice for untimeliness or for failure to state a claim, and she was granted 21 days to amend her complaint to cure the deficiencies pointed out in the Court's Opinion.

Plaintiff timely filed her Second Amended Complaint on September 9, 2015. [Docket Item 24.] Plaintiff's fifteen-count Second Amended Complaint consists of claims for municipal liability; conspiracy to commit gender discrimination in violation of 42 U.S.C. § 1985; violation of 18 U.S.C. § 241; violation of RICO; violation of Plaintiff's First Amendment right to engage in protected political speech; malicious prosecution; abuse of process; false arrest; violation of Plaintiff's Fourteenth Amendment liberty interest in reputation and property interest in employment; false light; tortious interference with a business relationship; intentional infliction of emotional distress; and defamation.

Defendants Gloucester Township, Gloucester Township Police Department, and Mayor Mayer again filed a motion to dismiss Plaintiff's Second Amended Complaint. [Docket Item 26.] Defendants also seek Rule 11 sanctions against Plaintiff's attorney, Vera McCoy, for filing a frivolous Second Amended Complaint. [Docket Item 32.]

16

## III. STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that the plaintiff failed to set forth fair notice of what the claim is and the grounds upon which it rests. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint will survive a motion to dismiss if it contains sufficient factual matter to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). Although a court must accept as true all factual allegations in a complaint, that tenet is "inapplicable to legal conclusions," and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Id. at 678.

## IV. DISCUSSION

### A. Tort Claims (Counts XII, XII, XIV, and XV)

Defendants first seek to dismiss Plaintiff's re-filed tort claims – false light (Count XIII), tortious interference with a business relationship (Count XIV), and intentional infliction of emotional distress (Count XV) - on the grounds that these same claims were dismissed with prejudice in the August 21 Opinion,[2]

---

[2] This Court dismissed with prejudice Plaintiff's claims in her first Amended Complaint for false light, tortious interference

and to dismiss Plaintiff's new tort claim for defamation (Count XII) for failure to comply with the NJTCA, N.J.S.A. 59:8-8. Plaintiff concedes that she did not provide the Township with notice of her claims prior to filing suit, but takes the position that she has amended her tort claims to remove them from the ambit of the NJTCA and its notice requirement. Plaintiff alleges that her claims for defamation, false light, tortious interference with a business relationship, and intentional infliction of emotional distress pertain to conduct undertaken while "Defendants were acting as private citizens, motivated by private concerns, and were not engaged in the execution of any public function which can be attributed to the municipality." (Second Am. Compl. ¶¶ 348 (defamation), 358 (false light), 368 (tortious interference with a business relationship), and 384 (intentional infliction of emotional distress).)

The NJTCA requires notice of a claim of injury against a public entity to be presented within ninety days of the accrual of the cause of action. A plaintiff is barred from recovering damages from a public entity if "he fail[s] to file his claim with the public entity within ninety (90) days . . . ." N.J.S.A.

---

with a business relationship, and intentional infliction of emotional distress for failure to comply with the notice requirement of the NJTCA. Evans v. Gloucester Twp., 124 F. Supp. 3d 340, 354 (D.N.J. 2015).

59:8-8.[3] The New Jersey Supreme Court in Velez expressly held that the notice provisions of the Act apply to intentional tort claims against public employees – even where such conduct "arguably could be classified as intentional or outrageous conduct" and the employee would not enjoy immunity under N.J.S.A. 59:3-14. Velez v. City of Jersey City, 850 A.2d 1238, 1244-45 (N.J. 2004). See also Lassoff v. New Jersey, 414 F. Supp. 2d 483, 490 (D.N.J. 2006) ("Suits against a public officer in his individual capacity are subject to the notice provisions of the TCA even though the public officer is not entitled to immunity under N.J.S.A. § 59:3-14."); Mawhinney v. Bennett, Civ. 08-3317, 2010 WL 2557713, at *7 (D.N.J. June 22, 2010) (same).

Plaintiff attempts to distinguish her case from Velez; in that case, a councilman allegedly kissed, fondled, and groped the plaintiff when she went to his office to thank him for his help with a work-related favor. 850 A.2d at 1240. Plaintiff contends that the setting of the tortious conduct in Velez – the defendant's office – is what brought his "outrageous conduct" within the scope of the NJTCA. She argues that "[i]mplicit in the [Supreme] Court's decision was that its holding was limited to intentional torts committed by public employees whom [sic]

_____

[3] Failure to comply with the notice requirements under the NJTCA precludes recovery against a public employee, as well as a public entity. N.J.S.A. 59:8-3; Velez v. City of Jersey City, 850 A.2d 1238, 1243 (N.J. 2004).

were acting in their public role to carry out an otherwise
legitimate public function," and that Defendants here were not
engaged in the performance of any public function when they
allegedly created and published the attack blogs against Ms.
Evans. (Pl. Br. at 7.)

The Court rejects Plaintiff's unnecessarily cramped reading
of Velez's holding as limited to cases where a public employee
allegedly engaged in intentionally tortious conduct during the
course of executing a public function. Any intentionally
tortious conduct is presumably outside the scope of a public
official's official duties, regardless of where such conduct
occurs. In interpreting the legislature's NJTCA notice
requirement to cover common law intentional torts, the New
Jersey Supreme Court in Velez closely examined the important
purposes underlying the requirement: to permit a public entity
time and resources to investigate, defend, and correct the
practices which gave rise to the claim. 180 N.J. at 290. Those
considerations are no less important here, where Plaintiff has
alleged a wide-ranging scheme between the Township's mayor and
other government officials.

Moreover, Plaintiff's conclusory allegation that Defendants
were motivated by private concerns and were not acting in the
execution of any public function contradicts the thrust of her
Second Amended Complaint: that this internet defamation campaign

20

was part of an expansive conspiracy directed by Defendant Mayer to squelch political opposition and as the product of a municipal policy or custom of political retaliation. Such conclusory assertions are insufficient to state a claim under the pleading scheme of the Federal Rules and <u>Iqbal</u>, but these allegations confirm that Plaintiffs' Second Ame7nded Complaint addresses torts of municipal officials arising from their public functions. Accordingly, because the Second Amended Complaint provides no indication that she has satisfied the notice requirement under the NJTCA, Plaintiff's tort claims for false light (Count XIII), tortious interference with a business relationship (Count XIIV), intentional infliction of emotional distress (Count XV), and defamation (Count XII) will be dismissed again with prejudice.

**B. Statute of limitations**

Next, Defendants argue that Plaintiff's re-filed claims under § 1983 and § 1985 (Counts IV, VII, VIII, IX, X, and XI) remain time-barred pursuant to the August 21 Opinion finding that the two year limitations period applicable to Plaintiff's claims had lapsed for most claims before the filing her of Complaint and that the statute of limitations should not be equitably tolled. Defendants contend that the Second Amended Complaint bases claims on the same alleged incidents held untimely in the previous iteration of Plaintiff's Amended

21

Complaint: her tenure as a Gloucester Township Councilwoman from January 2008-January 2012 (Second Am. Compl. ¶¶ 37-70); an alleged conspiracy to manufacture voting fraud charges against her in March 2012-July 2012 (id. ¶¶ 71-90); harassment at her workplace at the New Jersey Motor Vehicle Commission in Turnersville between July 19, 2010 and November 14, 2012 (id. ¶¶ 91-99); an allegedly false arrest from November 7, 2012 and ensuing malicious prosecution that was finally dismissed on March 27, 2013 (id. ¶¶ 100-146); and an internet defamation, intimidation, and sexual harassment campaign consisting of blog posts published between November 9, 2012 and March 4, 2013. (Id. ¶¶ 147-180.)[4] Plaintiff contends that the statute of limitations as to her tort and constitutional claims are tolled by equitable tolling, the discovery rule, and ineffective assistance of counsel, and that her claims arising from her malicious prosecution are timely because they did not accrue until March 27, 2013.

Defendants' statute of limitations argument is an affirmative defense and "the burden of establishing its

_____

[4] The Court found Plaintiff's claims based on these incidents time-barred except for those based on the allegedly improper prosecution, because it was not clear from the face of the Amended Complaint when charges against her were dismissed, and for those based on statements published on the Internet after November 14, 2012, which limitations period lapsed after the November 14, 2014 filing of her Complaint. Evans, 124 F. Supp. 3d at 353.

applicability to a particular claim rests with the defendant."
Pension Trust Fund for Operating Engineers v. Mortgage Asset
Securitization Transactions, Inc., 730 F.3d 263, 271 (3d Cir.
2013). A statute of limitations defense may be raised by motion
under Rule 12(b)(6) if the limitations bar is apparent on the
face of the complaint. Schmidt v. Skolas, 770 F.3d 241, 249 (3d
Cir. 2014). Moreover, the Third Circuit has stated in the
context of the discovery rule that when "the pleading does not
reveal when the limitations period began to run . . . the
statute of limitations cannot justify Rule 12 dismissal."
Schmidt, 770 F.3d at 251 (collecting cases) (quotation and
citation omitted).

    It is clear from the face of the Second Amended Complaint
that Plaintiff's tort and constitutional claims arising from her
time as a Gloucester Township councilwoman, from the purported
voting fraud incident, and the alleged workplace harassment she
suffered at the Motor Vehicles Commission remain time-barred,
and that no amended allegations in this iteration of her
complaint justify equitable tolling or the discovery rule.
Plaintiff now alleges that she did not learn that a constituent
"had been coerced into signing a false affidavit under threat of
arrest and lawsuit" until December 2012 (Second Am. Compl. ¶
90), meaning that her injury did not accrue until then, but this
Court has already ruled that such an averment, even if pleaded,

would not make her claim timely. Evans, 124 F. Supp. 3d at 353.[5]
Accordingly, the Court finds Plaintiff's § 1983 and § 1985
claims time-barred to the extent that they rely on her time as a
Gloucester Township councilwoman, the purported voting fraud
incident, and the alleged workplace harassment at the Motor
Vehicles Commission.

Similarly, Plaintiff's tort and constitutional claims
arising from her allegedly false arrest remain untimely. "[T]he
statute of limitations upon a § 1983 claim seeking damages for a
false arrest . . . begins to run at the time the claimant
becomes detained pursuant to legal process." Wallace v. Kato,
549 U.S. 384, 397 (2007). "The relevant inquiry becomes whether
the plaintiff had sufficient information on the night of his/her
arrest to state a claim for false arrest." Dique v. Mulvey, Civ.
04-563 (KSH), 2008 WL 1882856, at *5 (D.N.J. Apr. 24, 2008),
aff'd sub nom. Dique v. New Jersey State Police, 603 F.3d 181
(3d Cir. 2010). Plaintiff now formally alleges in the Second
Amended Complaint that she was unaware at the time of her arrest
"that Defendant, P/O Benjamin Lewitt had intentionally
misrepresented the existence of probable cause for her arrest"
and that she "had no reasonable grounds to suspect that

---

[5] Plaintiff offers no new allegations or arguments in her
briefing to find claims arising from her time as councilwoman or
at the Motor Vehicles Commission no longer time-barred.

Defendant, P/O Benjamin Lewitt, had any motivation other than faithfully reporting statements made by an alleged victim." (Second Am. Compl. ¶¶ 120-21.) She contends that the discovery rule now applies to her false arrest claim because she did not learn of the alleged lack of probable cause until criminal discovery was produced to her attorney on or around February 1, 2013; until then, she argues, she did not know the facts necessary to prove an arrest without probable cause. But regardless of these new allegations, Plaintiff knew at the time of her arrest that she did not commit the crime. If she always knew she was innocent, the discovery rule does not apply and her claim accrued on the day of her arrest. She had two years after arrest to determine whether it was supported by probable cause. What Plaintiff alleges she discovered later about the fabricated evidence from Ms. DeLucca would, it seems, simply be evidence for her malicious prosecution claim, not her false arrest. Because Plaintiff was arrested on November 8, 2012, the two-year limitations period on her claim expired before the November 14, 2014 filing of the instant lawsuit. Plaintiff's false arrest claim is time-barred.

In contrast, amendments to the Second Amended Complaint render Plaintiff's claims arising from her malicious prosecution and internet harassment facially timely. Malicious prosecution claims do not accrue until charges are dismissed. Ginter v.

25

Skahill, 298 Fed. App'x 161, 163 (3d Cir. 2008) (citing Smith v. Holtz, 87 F.3d 108, 111 (3d Cir. 1996).) The Second Amended Complaint now clarifies that Plaintiff's disorderly persons citations were dismissed by the Gloucester Township Municipal Court on March 27, 2013; the two-year limitations period on her claim had not yet lapsed by the November 2014 filing of Plaintiff's first complaint. Similarly, the Second Amended Complaint identifies particular blog posts by the date on which each was published. Any claims based on statements published prior to November 14, 2012 are time-barred, but Plaintiff has alleged numerous statements published later for which the statute of limitations had not yet run when she filed her original Complaint.

For these reasons, the Court now finds that Plaintiff's claims arising from her malicious prosecution and internet harassment are not time-barred and will consider their sufficiency under Fed. R. Civ. P. 12(b)(6).[6] Plaintiff's tort and constitutional claims arising from her time as a Gloucester Township councilwoman, from the purported voting fraud incident, from the alleged workplace harassment she suffered at the Motor

---

[6] Accordingly, the Court need not address Plaintiff's arguments that the statute of limitations should be equitably tolled on these claims because of ineffective assistance of counsel.

Vehicles Commission, and from her allegedly false arrest remain time-barred.

### C.   Section 1985 conspiracy claim

Plaintiff's Count IV presents a claim under § 1985, in which she alleges that Defendants engaged in a conspiracy to deprive Plaintiff of her constitutional rights under the First, Fourth, and Fourteenth Amendments based on gender discrimination. Section 1985(3) creates a cause of action against any two persons who "conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . ." 42. U.S.C. § 1985(3). To state a claim under § 1985(3), a plaintiff must allege the following elements: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the law; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott, 463 U.S. 825, 828-29 (1983). The second element requires plaintiff to allege that the conspiracy was motivated by racial, gender, or other class-based discriminatory animus. Griffin v.

Breckenridge, 403 U.S. 88, 102 (1971); Slater v. Susquehanna Cnty., 465 F. App'x 132, 136 (3d Cir. 2012) (quoting Farber v. City of Paterson, 440 F.3d 131, 135 (3d Cir. 2006)).

Defendants argue that Plaintiff has again failed to state a claim under § 1985(3) for three reasons: because the Second Amended Complaint contains only conclusory allegations of a conspiracy, because this Court already held that defamation is not actionable for purposes of a § 1985 claim, and because Plaintiff has not alleged that the actions allegedly taken against her were motivated by animus towards women as a class. In opposition, Plaintiff argues that her claim is actionable because "[a] large portion of the hostilities directed against Mrs. Evans came in the form of stereotypical sexual harassment." (Pl. Br. at 13.)

As a preliminary matter, the Second Amended Complaint again fails to adequately allege the existence of a conspiracy, the first element of a claim under § 1985(3). Plaintiff has made only conclusory allegations that Defendants have "acted in concert" to deprive her of rights and were "acting in furtherance of a conspiracy" (Second Am. Compl. ¶¶ 270, 271, 275), and adds very little to suggest that the conduct about which Plaintiff complains was anything more than a series of unrelated acts by several individuals. This is insufficient to allege an actual conspiracy.

28

Additionally, the Second Amended Complaint again fails to allege the deprivation of any federally protected right. Plaintiff's § 1985(3) claim, at least with respect to Defendant Mayer, is premised on allegations that Mayer and others "subjected Plaintiff to an internet defamation campaign which included using plaintiff's photograph to create fake profiles on internet porn sites" and engaged in a "systematic pattern of manufacturing an allegation, publicizing it, and then contemporaneously initiating a libelous and sexually degrading blog attack against plaintiff through gtrmc.com account holders."[7] (Second Am. Compl. ¶¶ 280, 281.) While Plaintiff's bolstered allegations that Defendants' internet conduct may constitute sexual harassment, and thus be considered gender animus, Plaintiff cannot escape the fact that this Court has previously held that defamation is not actionable under § 1985(3). Evans, 124 F. Supp. 3d at 355. To the extent that Plaintiff's § 1985(3) claim is premised on the voting fraud incident and Plaintiff's allegedly false arrest and malicious prosecution, Plaintiff has offered no allegations as to any gender-based "invidiously discriminatory animus behind the

---

[7] For purposes of this analysis, the Court does not consider Mayer's alleged conduct upon becoming Mayor of Gloucester Township in 2010, including encouraging council members to deride and intimidate Plaintiff, because this conduct is outside the limitations period as explained above.

29

conspirators' actions" regarding those incidents. <u>Griffin</u>, 403 U.S. at 102. A conspiracy to defame a political opponent, as odious as that conduct may be, is not within the prohibitions of § 1985(3). Therefore, the Court will again dismiss Plaintiff's § 1985(3) claim against Defendant Mayer for failing to allege the deprivation of a federally protected right.

**D.   Section 1983 claims**

Counts VII through XI of the Second Amended Complaint present claims for relief under § 1983, alleging violations of Plaintiff's constitutional rights under the First, Fourth, and Fourteenth Amendments.

Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To state a claim for relief under section 1983, a plaintiff must allege: 1) the violation of a right secured by the Constitution or laws of the United States and 2) that the alleged deprivation was committed or caused by a person acting under color of state law. <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988); <u>Piecknick v. Pennsylvania</u>, 36 F.3d 1250, 1255–56 (3d

30

Cir. 1994). See also Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

Defendants contend that Plaintiff's § 1983 claims against Defendant Mayer must be dismissed because she has failed to adequately allege any underlying constitutional violations and because she has failed to establish Defendant Mayer's individual capacity liability and, in the alternative, that he enjoys qualified immunity for any purportedly wrongful conduct. Plaintiff counters that Defendant Mayer is vicariously liable for any wrongful conduct of his co-conspirators and is not entitled to qualified immunity.

At the outset, the Court rejects Plaintiff's argument that Defendant Mayer may be held vicariously liable for the wrongful conduct of any of his alleged co-conspirators under the doctrine of civil conspiracy. As discussed in Part C, supra, Plaintiff has failed to adequately allege the existence of a conspiracy; the Second Amended Complaint offers only conclusory statements that Defendants "acted in concert" to deprive her of constitutional rights. Instead, Plaintiff must allege facts sufficient to establish Defendant Mayer's direct individual liability.

It is black-letter law that "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." Ashcroft v.

Iqbal, 556 U.S. 662, 676 (2009). State actors may be liable only for their own unconstitutional conduct. Bistrian v. Levi, 696 F.3d 352, 366 (3d Cir. 2012); Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). In other words, to state a § 1983 claim against Defendant Mayer, Plaintiff must allege conduct he undertook himself to deprive Plaintiff of constitutional rights, or, as a policymaker for the Township, that he 1) "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm;" or 2) he "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (quotations and citations omitted). See also Barkes v. First Corr. Med., Inc., 766 F.3d 307, 316 (3d Cir. 2014), rev'd on other grounds sub nom. Taylor v. Barkes, 135 S. Ct. 2042 (2015).

Plaintiff alleges in the Second Amended Complaint that Defendant Mayer and others violated her First, Fourth, and Fourteenth Amendment rights when they "subjected plaintiff to a false voter fraud allegation, false arrest, malicious prosecution and abused the criminal process to endanger plaintiff's employment in retaliation for her opposition to the municipality's culture of political patronage." (Second Am.

Compl. ¶ 331.) Notwithstanding the Court's conclusion above that many of Plaintiff's claims against Mayer are time-barred on the face of the Second Amended Complaint, Plaintiff has failed to allege sufficient facts demonstrating Mayer's personal involvement in the alleged wrongs to establish a § 1983 claim against him in his individual capacity. The Second Amended Complaint contains only the vague statement that "from January 2010 to the present, Defendant, David R. Mayer, along with a core group of loyal municipal employees, acted in concert to harm Plaintiff's physical, financial and psychological well being [sic] through a systematic pattern of harassment and intimidation" (¶ 334), but this bare allegation is insufficient to state a § 1983 claim for supervisory liability.

The Second Amended Complaint is similarly devoid of allegations supporting an inference that Mayer was personally involved or even aware of Plaintiff's arrest on November 8, 2012 and subsequent prosecution. The allegations central to Plaintiff's arrest and subsequent prosecution focus on the Township police officers who arrived on the scene on November 8, 2012 and others in the Police Department who allegedly failed to adequately investigate the underlying incident on which the charges against Plaintiff were based. Plaintiff does not allege that Mayer was involved in the investigation of the underlying incident or the decision to charge Plaintiff in a criminal

33

complaint. Consequently, Plaintiff's allegations, accepted as true, fail to set forth plausible grounds for Defendant Mayer's personal involvement in the November 8, 2012 arrest and subsequent prosecution as required to state a § 1983 claim against him.[8]

In the alternative, Defendants argue that Defendant Mayer enjoys qualified immunity for all of his purportedly wrongful conduct. Qualified immunity protects government officials from standing suit so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Kelly v. Borough of Carlisle, 622 F.3d 248, 253 (3d Cir. 2010). "When a qualified immunity defense is raised a court should first determine whether the plaintiff has asserted a violation of a constitutional right at all." Larsen v. Senate of Com. Of Pa., 154 F.3d 82, 86 (3d Cir. 1988); see also Saucier v. Katz, 533 U.S. 194, 121 (2001). For the following reasons, Plaintiff has failed to adequately allege any violations of the First, Fourth, and Fourteenth Amendments.

### 1. First Amendment retaliation (Count VII)

---

[8] The Court finds no need to address Plaintiff's allegations regarding conduct outside of the statute of limitations period, including the supposedly trumped-up voter fraud allegation and the alleged harassment at Plaintiff's workplace.

Plaintiff claims that Defendants retaliated against her after she engaged in speech protected by the First Amendment, opposing the municipality's patronage culture and supporting the pay-to-play referendum. To establish a claim for violation of the First Amendment based on protected speech, Plaintiff must allege (1) that her conduct was constitutionally protected and (2) that this conduct was a "substantial factor" or a "motivating factor" in the alleged retaliatory actions. Mt. Healthy School Dist. Bd. of Educ. V. Doyle, 429 U.S. 274, 287 (1977); Baldassare v. State of New Jersey, 250 F.3d 188, 195-96 (3d Cir. 2001). When the basis for a plaintiff's retaliation claim is an arrest or prosecution, she must also show the absence of probable cause. Hartman v. Moore, 547 U.S. 250, 265-66 (2006). Probable cause does not require certainty; "[p]robable cause exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." United States v. Myers, 308 F.3d 251, 255 (citing Beck v. Ohio, 379 U.S. 89, 91 (1964).)

Plaintiff cannot show an absence of probable cause for her purportedly false arrest. Plaintiff contends that, when the felony stalking complaint/summons against Plaintiff was issued, "Defendant P/O Benjamin, materially represented the existence of

35

a recorded statement by Angela DeLucca, and either knew, or should have known, that he did not have sufficient grounds to establish probable cause," and that while law enforcement officials represented to Plaintiff and her criminal counsel that they had a recorded statement from Ms. DeLucca, no such statement existed. (Second Am. Compl. ¶¶ 109, 120, 122, 329, 335.) Plaintiff's allegations are belied by the videotaped statement by Ms. DeLucca,[9] referred to in Plaintiff's own Second Amended Complaint (id. ¶ 105), where she describes a series of harassing phone calls from Plaintiff to her and her family

---

[9] The parties continue to disagree over when, if ever, Ms. DeLucca's recorded statement was handed over to Plaintiff or her counsel. Plaintiff maintains that Gloucester Township officers misrepresented the existence of Ms. DeLucca's statement and it was reasonable for her to believe that no probable cause existed for her arrest because no readable file was produced to her until dismissal motion practice in this litigation. Defendants contend that this statement was made available to her and her counsel during Plaintiff's previous criminal case, in the winter of 2013, and her allegations of misrepresentation in this case speak more to her and her counsel's incompetence than the Gloucester Township Police Department's malfeasance. The Court agrees with Defendants: Plaintiff cannot maintain the façade that no recorded statement exists, or that it was never made available to her, because Defendants have shown that it was provided to both of her criminal attorneys. (See Def. Mot. Ex. B, Request Return Form dated 1/29/13.)

The Court may consider the substance of Ms. DeLucca's recorded statement at this stage in the litigation because Plaintiff explicitly referred to it in the Second Amended Complaint. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)("a document integral to or explicitly relied upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment").

members, instances where Plaintiff followed her to her home, and at least two occasions where Plaintiff damaged the gutter on her home. Such statements can plainly give rise to probable cause for the offenses of felony stalking or criminal mischief.[10]

Accordingly, Plaintiff cannot state a claim for First Amendment retaliation on the basis of her allegedly false arrest and malicious prosecution. To the extent that her retaliation claim is premised on Plaintiff's time as a councilwoman, the supposedly trumped-up voter fraud allegation, and the alleged harassment at Plaintiff's workplace, these incidents occurred outside the limitations period and cannot give rise to a claim for relief.

### 2. Fourth Amendment false arrest, malicious prosecution, and abuse of process (Counts VIII, IX, and X)

Plaintiff avers that Defendants violated her Fourth Amendment rights when Gloucester Township Police Officers arrested Plaintiff and subjected her to a prosecution without probable cause. "The proper inquiry in a section 1983 claim based on false arrest or misuse of the criminal process is not

---

[10] N.J.S.A. 2C:12-10(b) provides that "[a] person is guilty of stalking, a crime of the fourth degree, if he purposefully or knowingly engages in a course of conduct directed at a specific person that would cause a reasonable person to fear for his safety or the safety of a third person or suffer other emotional distress. N.J.S.A. 2C:17-3a(1) provides that "[a] person is guilty of criminal mischief if he purposely or knowingly damages tangible property of another . . . ."

whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." <u>Dowling v. City of Philadelphia</u>, 855 F.2d 136, 141 (3d Cir. 1988).[11] As described above, Plaintiff has not – and cannot, with the existence of Ms. DeLucca's recorded statements being acknowledged – adequately alleged a lack of probable cause. Such probable cause for the arrest and prosecution existed in DeLucca's recorded statement prior to the arrest. This shortcoming is fatal to her claims for false arrest and malicious prosecution.

Plaintiff further alleges that Defendants violated her Fourth Amendment rights and committed an abuse of process when Gloucester Township Police Officers attempted to effectuate her November 8, 2012 arrest at her workplace, which was "highly unusual" and "unnecessarily punitive". (Second Am. Compl. ¶¶ 364-65.) To state a claim for abuse of process under New Jersey

---

[11] To state a claim for false arrest, a plaintiff must show: "(1) that there was an arrest; and (2) that the arrest was made without probable cause." <u>James v. City of Wilkes-Barre</u>, 700 F.3d 675, 680 (3d Cir. 2012). To state a claim for malicious prosecution, a plaintiff must show "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." <u>DiBella v. Borough of Beachwood</u>, 407 F.3d 599, 601 (3d Cir. 2005).

Law, a plaintiff must show "(1) an ulterior motive and (2) some further act after an issuance of process representing the perversion of the legitimate use of process." Stolinski v. Pennypacker, 772 F. Supp. 2d 626, 644 (D.N.J. 2011). "Process is not abused unless after its issuance the defendant reveals an ulterior purpose he had in securing it by committing further acts whereby he demonstrably uses the process as a means to coerce or oppress the plaintiff. In the absence of some coercive or illegitimate use of the judicial process there can be no claim for its abuse." Ruberton v. Gabage, 654 A.2d 1002, 1105 (N.J. App. Div. 1995) (internal citations omitted).

The Second Amended Complaint does not state sufficient grounds for Plaintiff to state an abuse of process claim that is plausible on its face because Plaintiff has not alleged an act that represents a "perversion of the legitimate use of process."[12] Despite Plaintiff's assertion that it was outside normal operating procedure for police to attempt to arrest her at the Motor Vehicle Commission, and that officers did so only to embarrass her at her workplace, such an arrest is not

---

[12] The parties disagree about what is the relevant "process" in this case: the arrest itself, as Defendants contend, or the issuance of criminal charges, as Plaintiff argues; if the relevant process is Plaintiff's arrest, Plaintiff has alleged no abusive "further acts after its issuance" and her claim must fail. Because the Court finds that Plaintiff has not alleged a perversion of process, the Court need not decide this question.

illegitimate (i.e. an act that exceeded the scope of what was reasonably necessary to effectuate Plaintiff's arrest). Plaintiff has only alleged in a conclusory fashion that the police officers "knew or should have known" that she was not at her office at the time, when that was a logical place for the officers to find her. In any event, no process was executed in her workplace, as Plaintiff voluntarily reported to the police station according to the Second Amended Complaint. Accordingly, Plaintiff's claim for abuse of process will be dismissed.

### 3. Fourteenth Amendment (Count XI)

Plaintiff alleges a violation of substantive due process under the Fourteenth Amendment for "deprivation of liberty interest in reputation and property interest in employment." (Second Am. Compl. Claim XI.) Although Plaintiff alleges that Mayer personally posted disparaging comments on the internet about her and directed others to engage in additional forms of cyber harassment, such allegations are also insufficient to state a claim under § 1983. According to Third Circuit precedent, allegations of defamation are "actionable under 42 U.S.C. § 1983 only if it occurs in the course of or is accompanied by a change or extinguishment of a right or status guaranteed by state law or the Constitution." Clark v. Twp. of Falls, 890 F.2d 611, 619 (3d Cir. 1989). "A liberty interest requires more than mere injury to reputation." Id. at 620. "To

have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead have a legitimate claim of entitlement to it." Baraka v. McGreevey, 481 F.3d 187, 205 (3d Cir. 2007) (citing Bd. of Regents of State Coll. v. Roth, 408 U.S. 564, 577 (1972)).

Plaintiff claims that the loss of her employment with the Motor Vehicle Commission constitutes the "extinguishment of a right or status guaranteed by state law" because "New Jersey creates a property interest in protecting an individual's employment relationships from tortuous [sic] interference." (Pl. Br. at 23.) But Plaintiff has failed to show that she had a right to her employment sufficient to trigger a violation of due process. She relies on Bishop v. Wood as standing for the proposition that an individual always has a property interest in employment that is protected by the due process clause of the Fourteenth Amendment, but that reliance is misplaced. There, the Supreme Court noted that "[a] property interest in employment can, of course, be created by ordinance, or by an implied contract," but did not hold that every state employment agreement gives rise to such an interest. 426 U.S. 341, 344 (1976). Instead, the Court noted that "a person's interest in a benefit is a 'property' interest for due process purposes if there are . . . rules or mutually explicit understandings that

support his claim of entitlement to the benefit and that he may invoke at a hearing." Id. at n. 6 (citing Perry v. Sindermann, 408 U.S. 593, 601 (1972).) "Not all contracts with a federal or state agency create a protectable property interest under the due process clauses of the Fifth and Fourteenth Amendments." Unger v. National Residents Matching Program, 928 F.3d 1392, 1398 (3d Cir. 1991).

Plaintiff has not alleged that anything in her employment agreement created a legitimate expectation to continued entitlement to her job with the Motor Vehicle Commission. See Roth, 408 U.S. at 578 (state employee's property interest in employment "was created and defined by the terms of his appointment"); see also Unger, 928 F.3d at 1399 (employee had no property interest in employment where she did not allege that her "contract itself includes a provision that the state entity can terminate the contract only for cause" or that she enjoyed some other protected status). Accordingly, Plaintiff's substantive due process claim under the Fourteenth Amendment for termination of employment will be dismissed.

In the alternative, Plaintiff brings claims under the Fourteenth Amendment for selective enforcement, contending that her false arrest and malicious prosecution constitute violations of the Court's Equal Protection jurisprudence. (Pl. Br. at 25.) To establish a selective enforcement claim under the Fourteenth

42

Amendment, a plaintiff must show: "(1) that he was treated differently from other similarly situated individuals, and (2) that the selective treatment was based on an unjustifiable standard, such as race, religion, or some other arbitrary factor, or to prevent the exercise of a fundamental right." Dique v. New Jersey State Police, 603 F.3d 181, 184 n. 5 (3d Cir. 2010). Plaintiff contends that she was treated differently because of her exercise of her First Amendment rights, but as discussed above, she has failed to allege a viable First Amendment retaliation claim. Nor has Plaintiff alleged that she was treated differently from other similarly situated individuals for a discriminatory reason. Accordingly, Plaintiff's claims for selective enforcement under the Fourteenth Amendment will be dismissed.

### E.   Municipal liability (Counts I, II, III)

Plaintiff brings municipal liability claims against Gloucester Township for failure to supervise its police officers, for an unconstitutional custom, policy, or practice, and for state created danger. Defendants argue that Plaintiff has again failed to state a claim for municipal liability under § 1983 under any of these theories of liability. Plaintiff takes the position that the Second Amended Complaint contains sufficient allegations "to establish that a culture of political retaliation existed within the Camden County Democratic Party,

and by extension the Municipality of Gloucester Township through the actions of its elected and appointed party members." (Pl. Br. at 25.)

It is well-established that municipal liability under § 1983 "may not be proven under the respondeat superior doctrine, but must be founded upon evidence that the government unit itself supported a violation of constitutional rights." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990) (citing Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978)). As a consequence, a municipality is liable under § 1983 for an unconstitutional policy or custom only when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Monell, 436 U .S. at 694; Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986) (plurality opinion) ("[M]unicipal liability under § 1983 attaches where-and only where-a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."). Whether a policy or a custom, "The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 404 (1997). Thus, for

plaintiff to sufficiently demonstrate municipal liability for an unconstitutional custom under § 1983, she must present facts to support a finding that execution of a specific policy or custom, or the directive of the municipality's final decision maker, caused the alleged harm. To maintain a claim for a failure to supervise or discipline its police officers, a plaintiff must show that the municipality was deliberately indifferent to the constitutional rights of its inhabitants. Groman v. Township of Manalapan, 47 F.3d 628, 637 (3d Cir. 1995).

Nearly all of Plaintiff's allegations giving rise to her claim for municipal liability pertain to events that happened before November 14, 2012; the two-year limitations period for personal injury claims in New Jersey passed for these incidents before she filed her first Complaint on November 14, 2014. Notwithstanding their untimeliness, Plaintiff's allegations of an unconstitutional custom or policy are insufficient. She asserts only that, during Camden County Democratic Committee meetings, "it was acknowledged and understood that political opponents were being harassed and intimidated by political operatives, law enforcement, and municipal authorities" and that "Defendants David A. Mayer and David Harkins, were aware that this culture existed and were deliberately indifferent to deterring this activity, or disciplining individuals involved in the harassment." (Second Am. Compl. ¶¶ 41, 201-03, 229.) But

Plaintiff offers nothing more to establish that an unconstitutional policy existed, that the municipality was deliberately indifferent to that policy, or that the Township or Police Department were the "moving force" behind the alleged misconduct, rather than Defendants as individuals. As this Court found with respect to Plaintiff's first Amended Complaint,

> Plaintiff's allegations attempt to frame a series of separate incidents as an extensive and prolonged conspiracy to retaliate against her for her political views, but the Amended Complaint contains no facts to support the conclusion that each act was the direct result of a municipal policy or custom or that a final policymaker's conduct caused the alleged constitutional harm.

Evans, 124 F. Supp. 3d at 359. Accordingly, Plaintiff's claims for a failure to supervise and an unconstitutional policy or custom will be dismissed.

Plaintiff's claim for state created danger similarly fails. The Due Process Clause does not impose an affirmative obligation on the state to protect its citizens. Phillips v. County of Allegheny, 515 F.3d 224, 235 (3d. Cir. 2008). "The state-created danger theory operates as an exception to that general rule and requires plaintiffs to meet a four part test: (1) the harm ultimately caused to the plaintiff was foreseeable and fairly direct; (2) the state actor acted in willful disregard for the plaintiff's safety; (3) there was some relationship between the state and the plaintiff; and (4) the state actor used his

46

authority to create an opportunity for danger that otherwise would not have existed." Id. Plaintiff alleges that Gloucester Township is liable because Defendant Mayer "identif[ied Plaintiff] as a political enemy of his Administration and the Camden County Democrat Committee" and participated and encouraged the harassment against her, which ultimately resulted the loss of her employment. (Second Am. Compl. ¶¶251-53.) Plaintiff's allegations do not establish any of these four elements; she has failed to allege that Defendant Mayer took any affirmative acts that put Plaintiff at risk, that there was any special relationship between Plaintiff and Defendant Mayer that imposed a duty of care on him, or that the alleged harassment threatened her safety in a manner that is recognized by the Third Circuit. See, e.g., Walter v. Pike County, Pa., 544 F.3d 182 (3d Cir. 2008) (considering state-created danger claim where police officers failed to warn Plaintiff of threatening behavior by the man who later murdered Plaintiff); Phillips, 515 F.3d 224 (considering state-created danger claim where state actor shot and killed Plaintiff); Kneipp v. Teider, 95 F.3d 1199 (3d Cir. 1996) (Plaintiff stated a claim for state-created danger where police officers left an intoxicated woman to walk home alone on a cold night and she fell down an embankment and suffered permanent brain damage). Therefore, Plaintiff's claims under a state-created danger theory of liability will be dismissed.

47

### F.   18 U.S.C. § 241 claim (Count V)

Plaintiff attempts to bring a new claim in the Second Amended Complaint for a conspiracy to deprive her "of a constitutional right in violation of 18 U.S.C. § 241." (Second Am. Compl. Count V.) Plaintiff cannot bring a civil claim under 18 U.S.C. § 241 because the statute creates no private right of action and none can be implied. Carpenter v. Ashby, 351 Fed. Appx. 684, 688 (3d Cir. 2009) (citing United States v. City of Philadelphia, 644 F.2d 187, 199 (3d Cir. 1980)). Accordingly, Count V of the Second Amended Complaint will be dismissed.

### G.   RICO claim (Count VI)

Plaintiff also brings a new claim in the Second Amended Complaint for violation of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1961, et seq., for subjecting "plaintiff to a systematic pattern of harassment and intimidation for opposing the municipality's political patronage system." (Second Am. Compl. ¶ 313.) To plead a violation of RICO, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985). Plaintiff's RICO claim will be dismissed because she has alleged none of the four required elements.

An enterprise is defined as "any individual, partnership, corporation, association, or other legal entity, and any union

or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Although, as Plaintiff points out, she has named in her Second Amended Complaint Gloucester Township as a defendant, which qualifies for that definition, she has included no such allegation in her complaint.

Nor has Plaintiff adequately alleged a pattern of racketeering activity, which requires a plaintiff to show that each defendant has committed at least two acts of racketeering activity within ten years of each other. 18 U.S.C. § 1961(5); H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 240 (1989). These acts must bear "the indicia of 'relatedness' and 'continuity.'" Genty v. Resolution Trust Corp., 937 F.2d 899, 907 (3d Cir. 1991).

Plaintiff alleges four violations of 18 U.S.C. § 1513(b)(1) and (2) as predicate acts, asserting that Defendants violated the statute "by coercing a witness to provide false testimony in a state court proceeding;" "by attempting to intimidate her for testifying in a state court proceeding;" "by tampering with her state employment in retaliation for her previous testimony in Berry v. DiJosie, Docket No. L-1876-12;" and "by subjecting her to a false arrest and malicious prosecution for reporting the perceived retaliation to the Department of Justice." (Second Am.

Compl. ¶¶ 314, 317-19.)[13] Although retaliation under § 1513 appears on the list of predicate offenses in § 1961(1), it is inapplicable here, and the Court need not accept Plaintiff's legal conclusion to the contrary.[14] The statute requires a nexus to federal proceedings, which Plaintiff has not alleged. Section 1513(b)(1) punishes threats and retaliation against any person for "the attendance of a witness or party at an official proceeding, or any testimony given or any record, document, or other object produced by a witness in an official proceeding." The term "official proceeding," as used in § 1513, means

> (A)  A proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury;
> (B)  A proceeding before the Congress;
> (C)  A proceeding before a Federal Government agency which is authorized by law; or
> (D)  A proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory agency or any agent or examiner appointed by such official or agency to examine the affairs of any person engaged in in the business of insurance whose activities affect interstate commerce.

---

[13] Plaintiff further argues that Defendants violated 18 U.S.C. § 1513(e) by interfering with her employment at the Motor Vehicles Commission, but this allegation will not be considered because it does not appear in the Second Amended Complaint.

[14] A court is not required on a motion to dismiss to accept as true Plaintiff's legal conclusions. Although a court must accept as true all factual allegations in a complaint, that tenet is "inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009).

18 U.S.C. § 1515(a). Therefore, the conduct of which Plaintiff complains – witness intimidation and retaliation for participating in New Jersey state proceedings – is not conduct which is punishable under § 1513(b)(1) and cannot serve as a predicate act for Plaintiff's instant RICO claim.

Moreover, even assuming that Plaintiff's allegation that her purportedly false arrest and malicious prosecution were in retaliation for a report she made to the Department of Justice, and that such an action qualifies as retaliation for providing "any information relating to the commission or possible commission of a Federal offense" under § 1513(b)(2), Plaintiff's allegation regarding Defendant Mayer's involvement in those incidents is merely conclusory. As discussed above in reference to Defendant Mayer's individual liability for Plaintiff's § 1983 claims, the Second Amended Complaint is missing essential allegations supporting an inference that Mayer was personally involved or even aware of Plaintiff's arrest on November 8, 2012 and subsequent prosecution.

Accordingly, without sufficient allegations of an enterprise and a pattern of racketeering activity, Plaintiff's RICO claim will be dismissed.

## H.   Rule 11 Sanctions against Attorney McCoy

By separate motion [Docket Item 32], Defendants seek to impose sanctions against Plaintiff's attorney, Vera McCoy, for

51

the frivolous filing of Plaintiff's Second Amended Complaint. Defendants argue that Attorney McCoy simply re-stated the claims dismissed by this Court in the August 21 Opinion, including those dismissed with prejudice; added new claims based on the same conduct previously found untimely; and continued to ground her claims in the patently false assertion that the Gloucester Township Police never provided Plaintiff with a copy of Ms. DeLucca's recorded statement in her criminal case. Plaintiff asserts that the Second Amended Complaint presents factual matter sufficient to trigger equitable tolling and make her claims timely, and sufficient to state a claim under Rule 12(b)(6).

Fed. R. Civ. P. 11(b) provides that "[b]y presenting to the court a pleading, written motion, or other paper . . . an attorney . . . certifies to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose . . . ; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support . . . ." If Rule 11(b) is violated, then Rule 11(c) permits the Court to impose sanctions, including reasonable expenses or nonmonetary directives.

Rule 11 provides that attorneys may be sanctioned if they fail to make an objectively reasonable inquiry into the legal legitimacy of a pleading. Fed. R. Civ. P. 11(b)(2) & (c); Gaiardo v. Ethyl Corp., 835 F.2d 479, 482 (3d Cir. 1987). Attorneys are required to conduct a "normally competent level of legal research to support the[ir] presentation." Simmerman v. Corino, 27 F.3d 58, 62 (3d Cir. 1994) (quoting Mary Ann Pensiero, Inc. v. Lingle, 847 F.2d 90, 94 (3d Cir. 1988)). Sanctions should be issued "only in the 'exceptional circumstance,' where a claim or motion is patently unmeritorious or frivolous." Doering v. Union Cnty Bd. of Chosen Freeholders, 857 F.2d 191, 194 (3d Cir. 1988) (quoting Gaiardo, 835 F.2d at 483). Rule 11 sanctions may be imposed even in the absence of subjective bad faith. Lieb v. Topstone Indus., 788 F.2d 151, 157 (3d Cir. 1986).

It is plain that most of the Second Amended Complaint borders on frivolous and ungrounded. Attorney McCoy not only ignored this Court's clear directives regarding the timeliness and sufficiency of claims asserted and dismissed in the first Amended Complaint, but brings claims that even a cursory look into precedent would reveal are barred, including a purported civil claim under 18 U.S.C. § 241, a § 1985 claim based on defamation, and a state-created danger claim without any allegations of threat to Plaintiff's bodily safety. Plaintiff's

attempt to do an end-run around the NJTCA notice requirement
presents a disingenuous reading of the New Jersey Supreme
Court's decision in Velez, her § 1983 claims against Defendant
Mayer contain no allegations of his personal involvement in her
alleged harassment, and her claims for First Amendment
retaliation, false arrest, and malicious prosecution rest on
obviously false contentions about the existence of Ms. DeLucca's
recorded statements. No reasonable attorney could have made due
inquiry into the factual and legal bases of these contentions
and still made them a basis of the Second Amended Complaint.
These errors reach the high standard for imposing sanctions
under Rule 11: a significant portion of Plaintiff's Second
Amended Complaint consists of claims that are patently
unmeritorious, including claims previously dismissed on the
merits by this Court in a detailed Opinion and Order filed
August 21, 2015, in Evans v. Gloucester Twp., 124 F. Supp. 3d
340 (D.N.J. 2015). Moreover, Plaintiff's counsel did not seek
reconsideration of that Opinion, nor did she argue in this case
that the previous rulings were incorrect. Instead, Plaintiff's
counsel made double work for the movants, who had already
prevailed on the identical or similar claims yet had to expend
attorneys' time and fees to address them again. .

    Having found that Rule 11 sanctions against Ms. McCoy are
warranted, the Court must now determine the nature of the

sanctions. Rule 11 provides, "A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c). The Court will impose a monetary sanction on Ms. McCoy, equal to one-third of Defendants' reasonable lodestar in preparing and filing this dismissal motion addressing the twice-faulty portion of the Second Amended Complaint, and in submitting Defendants' Rule 11 motion and reply papers. This is a rough percentage of the redundant claims she included in the Second Amended Complaint, despite prior law of the case and with no reasonable basis for reconsideration, and the truly baseless matter in the § 241 claim and § 1985 claim based on defamation. For other claims, though not meritorious, no sanction has been imposed because there could have been arguable merit and the claims had not previously been presented and rejected.

The Court acknowledges that it is being cautious in assessing only one-third of the efforts directed at the Second Amended Complaint as having been infected by Ms. McCoy's Rule 11 violation. The Court is mindful, however, that the principal

purpose of Rule 11 sanctions is to recognize and deter substandard performance in an exceptional case. The Advisory Committee Note (1993) emphasizes that "the purpose of Rule 11 is to deter rather than to compensate." Where an award of fees is made to another party, it should be limited to the portion of the expenses and attorneys' fees for services "directly and unavoidably caused by the violation of the certification requirement," Advisory Committee Note to Rule 11 Amendments (1993). Rule 11 should never be enforced to deter advocacy that is reasonable but unsuccessful in the end, nor is Rule 11 meant to deter non-frivolous arguments for extensions of existing law. Striking this balance, the Court is confident that an award to Defendants equal to one-third of the fees and expenses for legal services incurred in addressing the Second Amended Complaint will suffice to deter Ms. McCoy from future violations of the Rule 11 certification requirement while redressing Defendants' expenditures on account of Plaintiff's Rule 11 violation.

Defendants may submit their Affidavit for Fees and Services consistent with L. Civ. R. 54.2 within fourteen (14) days of the entry of the accompanying Order. Plaintiff's counsel will have fourteen (14) days thereafter to submit any objection as to the amount of fees and expenses, including any objection based on inability to pay such sanction. Defendants may respond to

Plaintiff's counsel's submission within seven (7) days

thereafter.

**V.   CONCLUSION**

An accompanying Order will be entered.


**June 29, 2016**                                 **s/ Jerome B. Simandle**

Date                                              JEROME B. SIMANDLE

Chief U.S. District Judge